IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-30756
Summary Calendar

TANZANIA BAKER

Plaintiff-Appellant

V.

FEDEX GROUND PACKAGE SYSTEM INC

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:04-CV-3401

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Tanzania Baker appeals the district court's grant of summary judgment in favor of FedEx Ground Package System, Inc. ("FedEx"). FedEx filed a motion to strike certain documents from the record and record excerpts. For the following reasons, we grant FedEx's motion and AFFIRM.

I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Tanzania Baker, an African-American female, worked for FedEx in New Orleans. FedEx terminated Baker's employment in October 2004. For the seven years prior to her termination, Baker was a Pick-up & Delivery Service Manager ("P&D Service Manager"). Baker's immediate supervisor was the Pick-up & Delivery Manager ("P&D Manager"), Valerie Woods, a Caucasian female. It is undisputed that friction existed between Woods and Baker.[1]

In September 2003, Robert Deans, a Caucasian male, became the Senior Manager of the New Orleans terminal. On September 24, Baker filed a written complaint that Woods reeked of alcohol while on the job. Baker testified that she was concerned that Woods would violate a Department of Transportation regulation if she operated a motor vehicle while intoxicated. In October 2003, Deans wanted all Service Managers, including Baker, to work during the weekends to prepare for a corporate audit scheduled for November. Baker informed Dean that she would be able to work only some of the weekend shifts because of child care issues. Baker and Deans corresponded via e-mail on this topic, and, by email dated October 28, Deans informed Baker that her failure to follow instructions could result in disciplinary action, including termination.

In January 2004, Woods transferred from FedEx's terminal in New Orleans to its terminal in Lafayette, Louisiana. On January 12, Baker filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination. On April 14, 2004, Baker filed an amended EEOC Charge alleging racial discrimination and retaliation.

---

[1] Baker claims that Woods discriminated against her by: (1) grabbing her cell phone and sticking a finger in her face; (2) making several racially offensive comments, such as calling Baker "fired girl walking" and "stupid"; (3) stating that "she did not want to work with people like" Baker and another African-American female; and (4) telling Baker that "whites rule" and "this should be a lesson, Blacks cannot report whites."

On September 13, 2004, Hurricane Ivan landed east of New Orleans, forcing FedEx to close its New Orleans terminal. In order to load the trucks to deliver the backlog of packages, Deans directed P&D Service Managers to work increased hours on Friday and Saturday, September 18-19. On September 19, Baker arrived at work with her two-and-a-half-year-old daughter. Deans permitted Baker to perform tasks in the office so that she could watch her daughter while working. Baker, however, sent an e-mail stating that she was "not able" to work because of childcare issues and left the terminal. Around this same time, Baker was scheduled to attend a training program in Pennsylvania. She notified FedEx's Human Resources department that she would be unable to attend because of childcare issues, and FedEx rescheduled her training for January 2005, when Baker indicated she could find someone to watch her daughter.

On September 29, 2004, Deans informed Baker that there were two Inbound Preload Service Manager ("Preload Manager") vacancies, and she would be moved from P&D Service Manager–a daytime position–to Preload Manager–a night position. Deans testified that he selected Baker and Kernan Martin, a Caucasian male, as Preload Managers because they were most familiar with the delivery areas serviced by the drivers. Deans told Baker via e-mail that it might be possible to "keep your move to Preload temporary, possibly no longer than a month." Baker was scheduled to start as Preload Manager on October 18. However, on October 15, Baker emailed Deans, stating: "I will not be working the Preload Shift 10/18/2004 because it is not financial [sic] feasible for me to do so. I will be coming in at my normal time Monday morning 10/18/2004." Deans replied that it was "essential for [Baker] to report to work on the Preload" and again described the position as a "temporary gap." Deans testified that he believed that Baker had options, such as family, for child care purposes.

Baker admits that she did not work as Preload Manager on October 18, 19, or 20. On October 20, 2004, Deans terminated Baker for her failure to follow instructions.[2] Baker filed suit against FedEx on November 4, 2004, alleging: race and gender discrimination under the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. Ann. § 23:301; intentional infliction of emotional distress; hostile work environment; and retaliation under the Louisiana Whistleblower Statute, La. Rev. Stat. Ann. § 23:967. Furthermore, on February 19, 2005, Baker filed her final EEOC Charge, alleging that she had been discharged based upon racial discrimination and retaliation.

On July 10, 2007, the district court entered an order granting FedEx's motion for summary judgment based upon "consideration of the briefs and the record herein, and for the written reasons that will be issued at a later date." On August 9, 2007, Baker filed a notice of appeal. On February 26, 2008–after the briefing in this case was completed–the district court issued a 17-page "Order and Reasons" explaining its rationale and entered a final judgment.[3]

---

[2] Deans testified that Valerie Woods was working in Lafayette throughout the duration of the Preload Manager incident. Woods was not consulted about the decision to terminate Baker.

[3] We agree with FedEx's contention–presented in a letter to this court pursuant to Federal Rule of Appellate Procedure 28(j)–that the parties briefed the full range of issues addressed in the district court's "Order and Reasons." Therefore, we find that further briefing is not required in this case.

Furthermore, while the district court did not offer its "Order and Reasons" until approximately seven months after it granted summary judgment for FedEx, it was within its authority, and Baker's notice of appeal is timely before us. Under Federal Rule of Appellate Procedure 4(a)(2), "[a] notice of appeal filed after the court announces a decision or order–but before the entry of the judgment or order–is treated as filed on the date of and after the entry." Therefore, Baker's appeal is treated as filed on February 26, 2008, and this appeal is properly before us.

Alternatively, it can be argued that Baker's notice of appeal is treated as filed 150 days after July 10, 2007. "Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, a judgment following an order on a summary judgment motion must be set forth in a separate document." Lemaire v. La. Dept. of Transp. & Dev., 480 F.3d 383, 386 (5th Cir. 2007). Under Rule 58(b)(2)(B), "if a separate judgment is required but not entered, judgment is deemed entered 150 days after the order." Id. Thus, arguably judgment was entered 150 days after

II.

This Court reviews de novo the district court's grant of summary judgment. Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 559 (5th Cir. 1997). Summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Clark v. America's Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997).

III.

Baker attached ten pages of documents to her notice of appeal, including, inter alia, the statements of four individuals (three of which were unsigned). These documents were not presented to the district court, but they are contained within the record on appeal and the record excerpts. On January 2, 2008, FedEx filed a motion to strike these documents. "This court's inquiry is limited to the summary judgment record before the trial court: the parties cannot add exhibits, depositions, or affidavits to support their positions on appeal . . . ." Topalian v. Ehrman, 954 F.2d 1125, 1131 n.10 (5th Cir. 1992). Accordingly, FedEx's motion to strike is GRANTED.

IV.

A. Claims Under the LEDL

Baker alleged race and gender discrimination under the LEDL. The district court found that: (1) any of Baker's causes of action accruing before November 4, 2003–one year prior to when Baker filed this suit–have prescribed under La. Rev. Stat. Ann. § 23:303(D); (2) any incidents occurring after December 2003 must be dismissed because Baker did not satisfy her pre-litigation notice obligation under La. Rev. Stat. Ann. § 23:303(C); and (3) Baker

the district court's order of July 10, 2007. In that case, Federal Rule of Appellate Procedure 4(a)(2) would still apply, such that Baker's appeal would be treated as timely filed 150 days after July 10, 2007. See id.

5

failed to establish race or gender discrimination regarding any claim, including her transfer to the night shift and her ultimate termination.

### 1. One-Year Prescriptive Period

The LEDL provides that: "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year." La. Rev. Stat. Ann. § 23:303(D). Accordingly, the district court found that any claims relating to conduct prior to November 4, 2003, were prescribed.

Baker argues that the one-year period is inapplicable here under the continuing violations doctrine, wherein a plaintiff is relieved from "establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997). However, "[i]n Nat'l R.R. Passenger Corp. v. Morgan, [536 U.S. 101, 113 (2002)] the [Supreme] Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir. 2004). "In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment." Id. "Therefore, Morgan makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period . . . ." Id. We find that Baker complained of "discrete acts"–namely, several comments from Woods, the transfer to the night shift, and her termination–rather than a "persisting and continuing system of discriminatory practices." Messer, 130 F.3d at 135 (internal citation omitted). Therefore, the continuing violations doctrine is inapplicable to this case, and the district court properly applied § 23:303(D).

### 2. Pre-Litigation Notice Obligation

The LEDL requires claimants to provide notice to their allegedly discriminatory employers prior to filing suit. Specifically, § 23:303(C) provides that:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

The district court found that Baker's race and gender claims–to the extent they rely upon actions occurring after December 2003–are dismissed because Baker's first two EEOC Charges did not allege incidents after December 2003, and her third EEOC Charge was filed after Baker filed this suit. The district court properly determined that FedEx was not put on notice of post-December 2003 incidents. Therefore, the district court properly applied § 23:303(C).[4]

In sum, incidents occurring prior to November 4, 2003, and incidents occurring after December 2003, cannot be considered when evaluating Baker's discrimination claims. Thus, we can properly consider events that occurred in the interim.

### 3. Race and Gender Discrimination Claims

Even assuming that Baker had properly put FedEx on notice of her allegations of discrimination, the district court properly granted summary judgment with respect to her transfer to the night shift and her termination. We look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws. See Smith v. Amedysis, Inc., 298 F.3d 434,

---

[4] Baker argues–for the first time on appeal–that she suffered race and sex discrimination for "failure to promote" when Todd Mathieu was promoted to a P&D Service Manager III position. This argument fails because FedEx was not put on notice of this claim under § 23:303(C) and because "[i]t is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered." Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc., 200 F.3d 307, 316-17 (5th Cir. 2000).

448 (5th Cir. 2002). To establish a prima facie case of race or gender discrimination, Baker must establish that she was: a member of a protected class, qualified for the position from which she was discharged, subjected to an adverse employment action, and treated less favorably than similarly situated individuals who were not members of her protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Vaughn v. Edel, 918 F.2d 517, 521 (5th Cir. 1990). If Baker establishes a prima facie case, "the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action." Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 402 (5th Cir. 2001). At that point, the McDonnell Douglas framework disappears and "the plaintiff must produce substantial evidence of pretext" in order to prevail on her discrimination claim. Id. at 402-03.

Regarding Baker's transfer to the night shift, the district court properly determined that FedEx articulated a legitimate, nondiscriminatory reason for its action. Specifically, Robert Deans transferred Baker to the night shift because of her familiarity with FedEx's routes in the New Orleans area. Given the lost productivity incurred because of Hurricane Ivan and the managerial position vacancies during the night shift, FedEx's proffered rationale is legitimate. Baker's transfer was intended to be temporary and, most importantly, Kernan Martin, a Caucasian male, was also transferred. These facts strongly indicate that FedEx engaged in legitimate business practices rather than impermissible discrimination.

Regarding Baker's termination of employment, the district court properly found that FedEx proffered a legitimate, nondiscriminatory rationale–Baker's failure to report to work for three consecutive days. While we acknowledge the great hardships Baker faced regarding childcare issues, the law simply does not support a finding of discrimination under these circumstances. Because Baker presented no summary judgment evidence to rebut or show pretext with respect

to the legitimate, nondiscriminatory reasons advanced by FedEx, Baker's claims were properly disposed of by the district court.

## B. Retaliation

Baker claims that FedEx unlawfully retaliated against her based upon her prior complaints and EEOC Charges. For the reasons explained above, Baker's retaliation claim can only be based upon events occurring between November 4, 2003 (one year prior to filing suit) and October 4, 2004 (when Baker was terminated).

The Louisiana Whistleblower Protection Act provides in pertinent part that: "An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law: (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law."[5] La. Rev. Stat. Ann. § 23:967(A). "[T]he appropriate framework for analyzing a retaliation claim under the Louisiana whistleblower statute is the same as that applied in Title VII retaliation cases." Smith v. AT&T Solutions, Inc., 90 F. App'x 718, 723 (5th Cir. 2004) (unpublished). To establish a prima facie case of unlawful retaliation, a plaintiff must show: "(1) that he engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007).

The district court properly found that FedEx articulated a legitimate, nondiscriminatory rationale–the same rationale that applied to Baker's race and gender discrimination claims. Therefore, Baker's retaliation claim cannot stand.

## C. Hostile Work Environment

---

[5] Under the statute, "'[r]eprisal' includes firing, layoff, loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected under Subsection A of this Section." La. Rev. Stat. Ann. § 23:967(C)(1).

Baker presents a race-based hostile work environment claim, relying primarily upon Valerie Woods's inappropriate comments, her transfer to the night shift, and her termination. To prevail on a hostile work environment claim, a plaintiff must prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[6] Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). "We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in original) (internal citation and quotation marks omitted). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003).

We have already found that Baker's transfer and termination were not unlawful. Although Woods's comments were inappropriate, they do not rise to the level of severity necessary to maintain a hostile work environment claim. The phrases "fired girl walking" and "stupid" are not "based on race" and, thereby, do not sustain a race-based hostile work environment claim. Woods's other comments—that "she did not want to work with people like" Baker and that "whites rule"—are race-related incidents, but they are not sufficiently severe and

---

[6] However, "where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 353 (5th Cir. 2001).

did not unreasonably interfere with Baker's work performance. Therefore, Baker's hostile work environment claim is without merit.

D. Intentional Infliction of Emotional Distress

Louisiana law provides that:

in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). We agree with the district court that Baker has not established either that FedEx's conduct was "extreme and outrageous" or that the emotional distress she suffered was "severe." Therefore, Baker cannot prevail on her intentional infliction of emotional distress claim.

V.

For the reasons described above, the decision of the district court is AFFIRMED.