# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2024

Lyle W. Cayce
Clerk

No. 23-30556

John Cole,

*Plaintiff—Appellant*,

*versus*

Quality Carriers, Incorporated, *a subsidiary of CSX Corporation*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CV-3968

Before Jones, Dennis, and Douglas, *Circuit Judges*.

Per Curiam:[*]

In this Title VII case, John Cole appeals the district court's grant of summary judgment in favor of Quality Carriers. He argues that the district court erroneously dismissed his discrimination claim and that he met his burden to show Quality Carrier's reasons for his termination were pretext for retaliation. For the reasons set forth herein, we AFFIRM the district court.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30556

I

In September 2018, John Cole began working as a driver at Quality Carrier's Fort Worth terminal. In February 2019, he was transferred to Quality Carriers' Bossier City terminal because of overstaffing in Fort Worth. Cole alleges that he was one of five drivers chosen for the schedule of a "pre-loader," which is a local driver who returns to his home base at the end of every shift.

In June 2019, Cole alleges he spoke to his terminal manager, John Beasley, to request a transfer to a different driving schedule because he was not making enough money under the pre-loader schedule. Beasley allegedly asked him to remain on the pre-loader schedule because "he was dependable and always on time" and that a pay raise was imminent for pre-loaders. Two weeks later, however, Cole alleges that Beasley removed him from the position because he was "always late" and replaced Cole, a black man, with a white driver.

Shortly after, Cole filed a complaint with human resources, claiming his removal from the pre-loader schedule and replacement with a white driver was discriminatory. The Director of Human Resources investigated, determined that Cole was late on at least one occasion, but the records were inconclusive regarding his timeliness on other occasions at issue, so Cole was reinstated as a pre-loader in July 2019.

Once he was reinstated, Cole then alleged that someone at Quality Carriers gave him a "fake" wash ticket, or a certificate of cleanliness, resulting in his delivery being rejected and a verbal warning from management. Cole again spoke to human resources, who determined that a white scheduler was responsible for creating the wash ticket, but that there was no evidence of racial discrimination or retaliation because the wash ticket

2

process was an outdated carry-over from a different company that was inconsistent with Quality Carriers' processes and procedures.

Cole claims that because of his claim of discrimination, human resources required Quality Carriers to change its process for scheduling pre-loaders and conducting internal investigations. Instead of complying, Cole alleges that management eliminated all pre-loader positions on paper, while hand-picking employees that they would allow to do pre-loader work. Quality Carriers, however, says this was not retaliation but that the position was eliminated in February 2020 because it was no longer economically practical to have a dedicated group of pre-loader drivers and that the decision had impacted all pre-loader drivers, black and white.

Cole also alleges that after the elimination of the pre-loader position, schedulers began assigning black drivers to work that was more difficult, unpredictable, and with longer drive times than their white counterparts. He claims he was scheduled for drives that management knew he would be forced to decline, including loads transporting hazardous material like jet fuel and kerosene. Cole alleges that he did not have requisite training or equipment to transport hazardous materials and that unsafe working conditions forced him to refuse these loads. Quality Carriers counters that none of the loads required a respirator or any other safety equipment, but even if they did, Cole possessed the requisite training and equipment to complete these drives.

Cole was terminated in May 2020. He timely filed a charge with the Equal Employment Opportunity Commission (EEOC) and the Louisiana Commission on Human Rights. On August 17, 2021, Cole requested a notice of right to sue from the EEOC, and then filed this suit in federal court on November 15, 2021, alleging employment discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964,

codified at 42 U.S.C. § 2000e (Title VII), and the Louisiana Employment Discrimination Law § 23:332.[1]  We have jurisdiction pursuant to 28 U.S.C. § 1291 to review a final decision of the district court.

## II

We review a grant of summary judgment de novo.  *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 217 (5th Cir. 2023) (citing *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017)).  Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "A fact is 'material' if resolving it one way or another might make one outcome of the lawsuit more or less likely; it need not be dispositive."  *Wallace*, 57 F.4th at 217 (citing *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009)).  "A genuine dispute over the fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357-58 (5th Cir. 2017)).  We must view the evidence in the light most favorable to the non-movant and resolve factual controversies in his favor.  *Id.*

## III

### A

---

[1] Employment discrimination claims brought under 42 U.S.C. § 1981, Title VII, and the Louisiana Employment Discrimination Law § 23:332 are analyzed under the same analytical framework as Title VII claims.  *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Baker v. FedEx Ground Package Sys., Inc.*, 278 F. App'x 322, 327 (5th Cir. 2008).  Likewise, retaliation cases are analyzed under the same Title VII framework.  *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).  Accordingly, we analyze both issues under Title VII's framework.

In a case such as this, where Cole relies on circumstantial evidence of discrimination to support his claims, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-20 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this framework, a plaintiff is entitled to a presumption of discrimination if he meets the "minimal initial burden" of establishing a prima facie case. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (internal quotation marks and citation omitted). This burden is "not onerous." *Id.* (internal quotation marks and citation omitted). Once a prima facie case is established, the burden shifts to the employer, who must show a legitimate, nonretaliatory reason for the adverse employment action. *Id.* If the employer meets its burden, the burden returns to the plaintiff to show that the employer's given reasons are pretextual by a showing of intentional discrimination. *Id.*

A prima facie discrimination claim requires a showing that the plaintiff "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his or her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (internal quotation and citation omitted). As the district court found, the discriminatory conduct here occurred when Cole, a black driver, was temporarily removed from the pre-loader schedule. But the district court concluded that Cole had failed to establish a prima facie showing of discrimination as to the fourth element.

For the purposes of this appeal, we assume *arguendo* that Cole has established a prima facie case of race discrimination. Thus, we will discuss whether he has sufficiently proven that Quality Carriers' stated reasons for

removing him from the pre-loader schedule were pretext for discriminatory motives.

Quality Carriers put forth evidence that it temporarily removed Cole from the pre-loader schedule because of performance issues, including several occasions between June 6, 2019, and June 16, 2019, where Cole was late in picking up a scheduled load. It further claimed that the temporary replacement by a white employee was permitted because that employee needed to be close to home to care for his wife. This evidence sufficiently shows a legitimate, nondiscriminatory reason. This is so because we must review the defendant's burden of production with "no credibility assessment" and a defendant only fails to meet is burden of production if it "has failed to introduce evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original).

It then becomes Cole's burden to show that Quality Carriers' stated reasons are pretext for discrimination. This requires Cole to prove both that the stated reasons are false, and that discrimination was the true reason. *Id.* at 515. Cole must present "substantial evidence" that Quality Carriers' proffered reason for his temporary removal is pretext for racial discrimination. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022).

Before this court, Cole argues that the district court's conclusion that he failed to show pretext applied the incorrect legal standard. In Cole's view, he satisfied his burden for three reasons. First, he presented evidence that

6

the timeliness issues were not to be believed, that he was removed without notice shortly after the pay increased for pre-loaders by a white man, and that Beasley's deposition testimony contradicted itself in parts.  Next, he points to demographics at Quality Carriers, including that 95 percent of its workforce is black, so the odds that a white man would replace him are unlikely.  Finally, he notes that the pre-loading position was eliminated shortly after he was reinstated.

Cole claims that Human Resources "found evidence that any lateness was likely caused by other workers at the terminal and was not Plaintiff's fault."  However, the portions of the record Cole cites to do not support his argument. During the Director of Human Resources deposition, she indicated that "[w]e determined that [Cole] was, in fact, late on at least one of the instances.  [Cole] claimed that the other instances – this is purely from his recollection – were based more on other people not having performed things they should have . . . ." She further stated that "[t]here were other instances where he was late, which we confirmed" but that the compromise solution was to move forward and "agree [Cole was] going to be on time from here on out."

As to his replacement by a white individual, Cole alleges that it is untrue that this employee was given the position because he needed to be home for his wife, arguing that this assertion is "undermined by the fact that Plaintiff's own requests to be put on the pre-load schedule for his own family reasons were not accommodated." But according to the record Cole has cited, Cole indicated that he would be available to pick up more shifts because his partner went on vacation without him.  This does not undermine Quality Carriers' assertion that Cole's white counterpart was temporarily chosen to

replace him to be closer to home to care for his wife.[2]  During Beasley's deposition, he indicated that Quality Carriers "do[es] its best to assist drivers that were having family issues, bad health in the family, situation where a parent or a sibling or a spouse was sick, we tried to keep them closer to home."  Moreover, as the district court found, Cole's arguments are entirely speculative and not based on his own personal knowledge.  We have held that "self-serving evidence"—including depositions, declarations, and affidavits—is sufficient evidence if it is based on personal knowledge and that the facts presented are "particularized, not vague or conclusory." *Guzman v. Allstate*, 18 F.4th 157, 161 (5th Cir. 2021) (citing Fed. R. Civ. P. 56(c)(4); *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).

As to his third claim—that the pre-loading position was eliminated shortly after he was reinstated—the pre-loading position was eliminated in February 2020.  But Cole was reinstated as a pre-loader in July 2019.  We find that this temporal distance, spanning a period of seven to eight months, undercuts Cole's argument that the position was eliminated "shortly" after he was reinstated.  *Compare Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (holding that two and a half months between a protected act and adverse employment action is sufficiently close in time to demonstrate causal connection), *with Lyons v. Katy Ind. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (holding that five months is not close enough to show a causal connection).

---

[2] Although Cole claimed that it was not his white counterpart's wife, but his stepfather who required additional care despite being deceased, this information was provided to him by his coworkers.  We agree with the district court that this evidence is not based on Cole's personal knowledge and therefore provides no substantial evidence.  Fed. R. Civ. P. 56(c)(4).  Moreover, Cole does not further this argument on appeal.

Accordingly, we agree with the district court that Cole has not provided substantial evidence to undermine Quality Carriers' legitimate reasons for any adverse employment actions.

B

To establish a prima facie case of retaliation, a plaintiff must show: (1) they participated in a protected activity; (2) their employer took an adverse employment action against them; and (3) a causal connection exists between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). Here, the retaliatory conduct Cole points to is the elimination of the pre-loader position, the schedulers sabotaging his work multiple times between the time he complained about discrimination until the time the pre-loader position was eliminated, and his ultimate termination in May 2020. The district court concluded Cole had established a prima facie case of retaliation. Again, for purposes of this appeal, we will assume *arguendo* that Cole has established a prima facie case.

If the plaintiff can establish a prima facie case, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013). After this showing, a plaintiff must show that the defendant's proffered legitimate reasons for its actions are pretext by providing evidence that the adverse employment action would not have occurred "but for" the protected activity or discrimination. *Garcia*, 938 F.3d at 243-44 (citations omitted).

Turning to Quality Carriers proffered legitimate, non-retaliatory reasons for its conduct, it claims first that it discontinued the pre-loader position for all drivers because it became economically infeasible to maintain it. It also argues that Cole has no evidence to show the schedulers were even

aware of his discrimination claim, so had no reason to sabotage him. Finally, it claims that the wash ticket incident was not unique to Cole, because it was the result of a faulty paperwork process inherited from another entity that impacted all the drivers. These reasons are sufficient to carry Quality Carriers' burden to show a nonretaliatory reason for its conduct.

It then becomes Cole's burden to show these proffered reasons are pretext for discrimination. *Royal*, 736 F.3d at 400. As noted, Cole must prove but-for causation, which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Although "temporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007), "[t]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia*, 938 F.3d at 244 (internal quotation and citation omitted).

On appeal, Cole argues that he has satisfied his burden for two reasons. First, he alleges that he was "subjected to a consistent pattern of discrimination and retaliation." Next, he claims that he "enumerated safety trainings that he was not provided that rendered his transport of jet fuel unsafe under Defendant's policy." In response, Quality Carriers' asserts that there is "no causal connection" between his June 2019 complaint and the elimination of the pre-loader position in February 2020. Pointing to the record evidence, it notes that it discontinued the pre-loader position for *all* drivers because it was no longer economically feasible to maintain it. Finally, it notes that there is no causal connection between Cole's discrimination complaint in June 2019 and his termination in May 2020 because the record shows that he "consistently refused to accept loads within his driver category."

First, the evidence in the record supports Quality Carriers' assertion that the pre-loader position was eliminated for all employees, black and white, due to economic reasons.

As to the consistent pattern of discrimination, Cole only points to one occasion involving the wash ticket. As previously explained, the wash ticket incident was an issue with many drivers because of a faulty paperwork process. Moreover, Cole himself testified that he did not have specific knowledge that any of the other dispatchers responsible for scheduling knew of his complaints.

As to the safety trainings and equipment, Cole offers this evidence to show that his termination was retaliatory. Quality Carriers asserts that Cole was terminated for his consistent refusal to accept loads within his driver category. The record evidence supports this, as it shows that Cole was "pick[ing] and choos[ing] what he will and will not run according to what the loads pay." Further, he turned down several feedstock loads without explanation, and continues to provide no explanation in his reply brief. Quality Carriers' Vice President of Safety explained that its drivers had no real exposure to hazardous materials in the course of their duties. Further, Cole was unable to identify which safety trainings he needed to complete the loads.

Because of the lack of evidence supporting his claims, Cole is unable to establish but-for causation tying his reporting of discrimination to the elimination of the pre-loader position, the wash ticket incident, or his ultimate termination in May 2020.

## IV

Even viewed in the light most favorable to Cole, he is unable to satisfy his burden to prove pretext. Accordingly, the judgment rendered by the district court is AFFIRMED.