NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2115
_____

JASMINE D. YOUNG,

Appellant

v.

CITY OF PHILADELPHIA POLICE DEPARTMENT;
PHILADELPHIA POLICE COMMISSIONER
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:12-cv-05729)
District Judge: Hon. Eduardo C. Robreno
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 22, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, Circuit Judges

(Filed: June 3, 2016)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Jasmine D. Young ("Young") appeals from the order granting summary judgment to the City of Philadelphia Police Department ("Department") on her claim that the Department retaliated against her for filing a harassment complaint, in violation of Title VII, 42 U.S.C. § 2000e-3. The District Court concluded that Young did not make a prima facie showing of retaliation because she did not establish her harassment complaint was the "but for" cause of her termination. Because we have not stated in a precedential opinion that "but for" causation is not required at the prima facie stage of summary judgment analysis, the District Court understandably mistook its applicability. We will nonetheless affirm the order granting summary judgment because Young failed to show that the Department's legitimate explanations for her dismissal were pretextual.

I

On February 22, 2011, Young enrolled as a recruit at the Police Academy. While at the Police Academy, Young was subject to its Rules and Regulations, the violation of which may lead to discipline, including requiring recruits to write a memo describing the violation, undertake a "duty day," which is an hour of extra tasks performed after a recruit's regular training day, or incur demerits. Supp. App. 157. The type of punishment, including the number of demerits that may be imposed, varies based upon the rule that is violated and whether the recruit had previously violated that rule. Superior officers have discretion when assessing the type and amount of discipline a recruit receives for violating a rule. When a recruit accumulates fifteen or more demerits, he or she is recommended for rejection from the Police Academy.

2

Early in her tenure at the Police Academy, Young failed to bring her license to roll call, and as a result was required to write a memo and received one duty day. Young received more discipline for a variety of incidents that occurred after she complained about the behavior of a fellow recruit, Hamin Chamberlain. About one month after they both enrolled in the Police Academy, Chamberlain told Young that he had romantic feelings for her. Young rebuffed his overtures, and his behavior toward her changed. She asserts that he followed her, swore at her, and posted negative comments about her online.

On April 8, 2010, Young submitted two memos to a supervisor, Sergeant Tim Fanning, about Chamberlain. One memo described his allegedly harassing conduct and the other recounted an episode during class in which Chamberlain's classmates laughed at a question he asked and Chamberlain responded with a lewd gesture and threatening remarks.[1] Sergeant Fanning encouraged Young to file a complaint with the Department's EEO unit, which she did on April 18, 2010. Thereafter, the Department's Internal Affairs Bureau commenced an investigation. During the investigation, Chamberlain was transferred to another platoon.[2]

---

[1] Chamberlain was later interviewed about the incident, acknowledged what had occurred in class, and reported during or after the class that Young made derogatory comments to him and called him "an idiot." Supp. App. 257-58.

[2] Chamberlain was eventually dismissed from the Police Academy for incidents involving another recruit. Supp. App. 245-46.

On April 20, 2010, two days after she filed her complaint, Young received her first two demerits[3] and two additional duty days. Young violated the rule that required that a recruit have all equipment at roll call. Young admits that she violated the rule and the discipline she received was warranted.[4]

On April 26, 2010, Young was disciplined for insubordination. More specifically, Young complained in the presence of a Corporal about having to perform a duty day for her conduct on April 20. The insubordination rule provided a range of discipline from five to nine demerits and five to nine duty days. Young was given seven demerits and seven duty days for the offense, bringing her total number of demerits at that point to nine. Young claims that when she questioned the Corporal about his motive for the discipline, his reaction made her feel as if the discipline was in retaliation for her EEO complaint.[5] Young claims that a Captain told her that he did not understand why she received so many demerits for her first insubordination offense and she asserts that

---

[3] Young received duty days for failing to have her license during roll call on April 2, 2010, S.A. 20, but it is unclear from the record whether she received demerits from this infraction.

[4] That same day, Sergeant David Lee caught Young and two other recruit officers talking in the hallway, in violation of the rule that prohibited congregating in the corridors. No demerits were assigned but all three were ordered to write memo about the incident. Young claims that Lee looked at her specifically, which she claims made her feel singled out in retaliation for the complaint.

[5] When asked at her deposition why she felt her discipline for insubordination was the result of her EEO complaint, she replied, "[j]ust by the way that he acted towards me and the way that he reacted about the situation. . . . I actually mentioned it to him. . . I said, like, was this because I made the complaint? Like, where is this coming from? Because he never really, like, went off that way. And he was like, no it had nothing to do with it, and he pretty much like – he just gave me like a weird look." Supp. App. 26-27.

another recruit engaged in similar conduct, but was charged with committing a more minor type of insubordination and received only two demerits and two duty days.

On May 24, 2010, Young received another demerit, this time from Sergeant Fanning, for parking in the staff parking lot. In imposing the discipline, Sergeant Fanning noted that Young had requested that Chamberlain not be permitted to park in the recruits' parking lot and in response, the Department ordered him to park elsewhere. Young nonetheless parked her car in the staff parking lot two cars down from Chamberlain's. Young alleged that this demerit was in response to her EEO complaint because Sergeant Fanning stated that she had "wanted this." Supp. App. 43.

On June 11, 2010, Young was issued three demerits for violating the rule that prohibits "reckless driving on or off Academy grounds." Supp. App. 172, 224. Several days earlier, Young had received a speeding ticket. The applicable rule prohibiting such conduct permits discipline of up to five demerits and five duty days. Young asserts that she received three demerits, instead of a lower number, because of her EEO complaint.[6]

On June 30, 2010, Young met with Captain William Maye, the Commanding Officer of the Recruit Training Unit, to discuss the thirteen demerits she had accumulated. Captain Maye warned Young that she was two demerits away from potentially being rejected from the Police Academy and advised her to stay out of trouble.

---

[6] On June 17, 2010, Young had to write two memos, one for being late to class, and one for writing a memo on a form that had already been written on. She does not dispute the appropriateness of the discipline for these infractions.

Although she did not receive any demerits between that meeting and September 8, 2010, when the investigation into her EEO complaint concluded, Young argues that she was placed under stricter scrutiny after this counseling session and was inappropriately disciplined multiple times. For example, Young claims she was verbally reprimanded once for wearing her tie at too long a length, although she says it was a clip-on tie that she always wore in the same fashion. Another time she was reprimanded for having a gym bag that looked like a purse. She claims that she was singled out in each instance for retaliatory reasons. Young also asserts that she was subjected to inappropriate comments from other recruits that the Police Academy leadership did not address.[7]

On September 8, 2010, the EEO investigation, which included interviews of all of Young's classmates and ten of her instructors, concluded. The investigating officer, Police Officer Elizabeth Ortiz, reported that none of the witnesses could corroborate Young's claims of harassment by Chamberlain, aside from some of the details of the April 8, 2010 classroom incident. While the instructors did not notice the events in the classroom, recruits confirmed that the classroom incident occurred roughly as described by Chamberlain and Young, and reported that Chamberlain had difficulty in the class and that a number of "fellow classmates" regularly "joke[d] about it." Supp. App. 140. Recruits also told the investigator that Young, in particular, "picked on . . . Chamberlain whenever he asked questions in class[,]" Supp. App. 139-41, calling him names and insulting his intelligence.

---

[7] Young claims that one recruit made unwanted sexual comments and advances towards her, and a second made derogatory comments to her.

As a result of the investigation, Captain Maye submitted a "Request for Rejection During Probation" to his superior officers. Supp. App. 227-29. The request stated that the investigation revealed Young "had used obscene and disrespectful language to [Chamberlain] and that she verbally harassed him on Academy grounds." Supp. App. 228. Young was given two demerits for the use of profanity[8] and five demerits for verbal abuse, which were the recommended discipline levels for violations of those rules, giving her a total of 20 demerits, well beyond the 15 needed for rejection. Captain Maye also found that Young had violated the rule requiring her "to cooperate in a departmental administrative investigation" because she "did not tell the truth during the investigation," which has a penalty of automatic rejection from the Police Academy. Supp. App. 228. The request for rejection was approved and Young was dismissed effective September 30, 2010.

Young brought claims against the Department alleging gender discrimination, hostile work environment, sexual harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. After discovery, the Department filed a motion for summary judgment on all of her claims, which was granted. Young appeals only the order granting summary judgment on her Title VII retaliation claim.

---

[8] Young claims that other recruits used profanity and were not disciplined. For example, she witnessed one recruit use profanity in front of a Corporal at a social event, who did not discipline him, but stated that he was "not hearing any of this." Supp. App. 81.

**II**[9]

**A**

Title VII prohibits employers from retaliating against employees for complaining about discrimination and harassment in the work place. See Civil Rights Act of 1964, § 704, 42 U.S.C. § 2000e−3. Where there is no direct evidence of retaliation, claims alleging retaliation under Title VII are analyzed under the McDonnell Douglas burden-shifting framework. Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, a plaintiff must first establish a prima facie case of retaliation under Title VII, by showing that: (1) she "engaged in [a protected] activity"; (2) "the employer took an adverse employment action against her"; and (3) "there was a causal connection between her participation in the protected activity and the adverse employment action." Id. at 340-41 (internal quotation marks and citation omitted). If the plaintiff establishes a prima facie case of retaliation, then the burden shifts to the employer to provide a legitimate, non-retaliatory reason for its conduct. Id. at 342. If it does so, the burden then shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse

---

[9] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. Alcoa, Inc. v. United States, 509 F.3d 173, 175 (3d Cir. 2007). In doing so, we apply the same standard as the District Court, viewing facts and making reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-movant. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

employment action." Id. (internal quotation marks and citation omitted); see also Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Thus, the plaintiff must ultimately prove that her employer's retaliatory animus was the cause or, put differently, the "real reason," for the adverse employment action. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000) (using the term "real reason" to describe the plaintiff's ultimate burden at the pretext stage); see also Moore, 461 F.3d at 342 (identifying that the "ultimate question in any retaliation case is an intent to retaliate vel non" (quoting Jensen v. Potter, 435 F.3d 444, 449 n.2 (3d Cir. 2006)) (alteration omitted)).

A plaintiff must address causation at both the prima facie and pretext stages, but the type of causation that must be shown at each point differs. Farrell, 206 F.3d at 286. To establish causation at the prima facie stage, a plaintiff must introduce evidence about the "scope and nature of conduct and circumstances that could support the inference" of a causal connection between the protected activity and adverse action. Id. at 279. At this stage, "a plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between [the] protected activity and the adverse action taken." Marra, 497 F.3d at 302 (quoting Farrell, 206 F.3d at 284). For example, very close temporal proximity between the adverse action and the protected activity may be "unusually suggestive" of a causal connection. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (internal quotation marks and citations omitted). A plaintiff can also rely on evidence such as "intervening antagonism or retaliatory animus, inconsistencies in the

employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." Id. at 232-33.

By contrast, to prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action "but for" her protected activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). In Nassar, the Supreme Court analyzed Congress's use of the term "because" in Title VII's retaliation provision, 42 U.S.C. § 2000e−3(a), and compared it with the "motivating factor" language in the status-based discrimination provision.[10] See id. at 2527-28. While decided in the context of a review of rulings on post-trial motions and not in the context of the McDonnell Douglas burden-shifting framework, the Nassar Court held that a retaliation plaintiff must prove traditional "but-for" causation to prevail on the claim, and that the "mixed-motive" standard is appropriate only in status-based discrimination cases, where Congress used the term "motivating factor."[11] Id. at 2532-34.

---

[10] Compare 42 U.S.C. § 2000e−3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); with 42 U.S.C. § 2000e−2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.").

[11] In reaching this conclusion, the Court explicitly relied on its prior interpretation of the similar "because of" phrase used in the Age Discrimination in Employment Act ("ADEA"). Id. at 2527-28 (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), which replaced the "mixed-motive" framework with a "but-for" standard under the ADEA).

Some appellate courts have concluded that Nassar's "but-for" causation standard applies only at the pretext stage and does not alter the causation prong of the prima facie stage of retaliation analysis. See Foster v. Univ. of Md. E. Shore, 787 F.3d 243, 252, 252 n.15 (4th Cir. 2015) (explaining that "the McDonnell Douglas framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action" and concluding that Nassar did not alter the requirements for a prima facie case); Zann Kwan v. Andalex Grp., LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment."); Feist v. La. Dep't of Justice, Office of the Att'y Gen., 730 F.3d 450, 454 (5th Cir. 2013) (applying Nassar's "but-for" standard at the pretext stage).[12]  As the Court of Appeals for the Fourth Circuit observed, "the causation standards for establishing a prima facie retaliation case and proving pretext are not identical.  Rather, the burden for establishing causation at the prima facie stage is less onerous."  Foster, 787 F.3d at 251 (internal quotation marks and citation omitted). Applying the "but-for" standard at the prima facie stage would effectively eliminate the need to use the McDonnell Douglas burden shifting framework because plaintiffs who can prove "but-for" causation at the prima facie stage would essentially "be able to

_____

[12] We note that at least one court of appeal has required but-for causation at the prima facie stage but did not explicitly analyze the issue.  See Ward v. Jewell, 772 F.3d 1199, 1203 (10th Cir. 2014) (requiring but-for causation to satisfy prima facie case). Other courts have precedential opinions going in both directions: Compare Montell v. Diversified Clinical Servs., Inc., 757 F.3d 497, 507 (6th Cir. 2014) (treating Nassar as not altering the prima facie case), Butterworth v. Lab. Corp. of Am. Holdings, 581 F. App'x 813, 817 (11th Cir. 2014) (per curiam) (same) with Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634, 649 (6th Cir. 2015) (citing Nassar's but-for causation requirement as describing the "fourth part of the" prima facie case).

11

satisfy their ultimate burden of persuasion without proceeding through the pretext analysis." Id. If the Supreme Court intended to end the use of burden shifting in retaliation claims, "it would have spoken plainly and clearly to that effect." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007)). Thus, for a plaintiff to prevail at the pretext stage, he or she must produce evidence showing that the employer's reason for its action was false and retaliation for engaging in the protected activity was the real reason, or "but-for" cause, for its actions. [13]

Because the District Court required "but-for" causation at the prima facie stage, rather than requiring proof of the lesser causal connection that applies at the prima facie stage under Farrell, we examine the record de novo under this lower causation standard and, in doing so, conclude that Young established a prima facie case. First, by filing an EEO complaint, Young engaged in the quintessential protected activity. See Moore, 461 F.3d at 341; 42 U.S.C. § 2000e−3(a) (prohibiting retaliation against an employee who "made a charge . . . under this subchapter"). Second, Young suffered materially adverse employment actions that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore, 461 F.3d at 341 (quoting Burlington N.

---

[13] This result is also consistent with our ADEA precedent, in which a "but-for" standard applies to a plaintiff's ultimate burden of proof at the pretext stage. In Smith v. City of Allentown, we held that "the but-for causation standard required by Gross does not conflict with our continued application of the McDonnell Douglas paradigm in age discrimination cases" and explained that a plaintiff can establish "but-for" causation by showing that the employer's proffered rationale for terminating her was a pretext for age discrimination. 589 F.3d 684, 691 (3d Cir. 2009); see also Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (citing the "but-for" standard as the overall burden of proof for the plaintiff and requiring the plaintiff to show that discrimination was the real reason for termination at the pretext stage).

& Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation and internal quotations omitted)). The demerits that Young accrued following her complaint as well as her ultimate rejection from the Police Academy are both adverse employment actions that could dissuade a reasonable Police Academy recruit from filing a harassment complaint with the EEO unit.

Third, Young has satisfied the causation component of the prima facie case by producing evidence that "could support the inference . . . of a causal connection" between the protected activity and the adverse employment action.[14] Farrell, 206 F.3d at 279; Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (explaining that "the proffered evidence, looked at as a whole, [must] suffice to raise the inference" of causation (citation omitted)). Young received demerits from a Corporal for insubordination, which she claims were not justified, just eight days after filing her EEO complaint. A span this short is suggestive of retaliation at the prima facie stage. See, e.g., Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (two days is unusually suggestive); see also LeBoon, 503 F.3d at 233 (three months not unusually suggestive); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759-60 (3d Cir. 2004) (two months not unusually suggestive). This, combined with the fact that Young points to a

---

[14] The same evidence may be relevant at both the prima facie and pretext stages of analysis. Farrell, 206 F.3d at 286 ("We recognize that by acknowledging that evidence in the causal chain can include more than demonstrative acts of antagonism or acts actually reflecting animus, we may possibly conflate the test for causation under the prima facie case with that for pretext. . . . As our cases have recognized, almost in passing, evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other." (citations omitted)).

similar incident in which the same Corporal awarded less discipline to a different recruit officer, could support an inference of retaliation.[15]

In addition, drawing all inferences in Young's favor, Young has shown a series of disciplinary episodes that could be viewed as a reflecting pattern of antagonism towards her. See, e.g., Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993) (causation can be established through a "pattern of antagonism" such as a "constant barrage of written and verbal warnings . . . and disciplinary action[s] . . . soon after plaintiff's initial complaints"). After filing her complaint on April 18, Young was reprimanded or received discipline on April 20 and 26, May 24, June 11 and 17, and July 22. Some of the discipline was imposed for infractions such as congregating in the hall, being late to class, carrying a feminine-looking bag, and failing to shine her shoes. This pattern, together with Young's assertions that other recruits were not similarly punished for the same conduct, allows us to infer, at the prima face stage, a causal connection between the complaint and the adverse actions.

---

[15] We also note that Young was recommended for termination shortly after the results of the investigation into her complaint were issued. One of the reasons proffered for her termination was that she failed to cooperate in the investigation of her complaint by not telling the "truth during the investigation." Supp. App. 228. However, the investigation report can also be read to indicate simply that Young's classmates did not corroborate her claims of harassment, not that Young's story was contradicted. See Supp. App. 137-44 (investigation report, stating that none of the witnesses could corroborate each of Young's claims of harassment by Chamberlain, though they did report some of the details of the classroom incident). Viewing this evidence in the light most favorable to Young, one could conclude that the investigation results were construed against her to punish her for filing the complaint, adding further support to an inference that there is a causal connection between the complaint and her termination.

14

While Young has produced sufficient evidence to support a prima facie case of retaliation, her claim nonetheless fails. Under the burden-shifting framework, the Department has carried its burden and provided a legitimate non-retaliatory reason for Young's rejection, namely her repeated rule violations and accrual of a significant number of demerits, and Young had not sustained her burden to show that this reason was pretextual.

To show pretext, Young must show "both that the [Department's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)); see also Marra, 497 F.3d at 300-01 (quoting Moore, 461 F.3d at 342). Young does not contest that she engaged in most of the underlying conduct for which she was punished. See Supp. App. 21 (forgetting license and pocktknife); Supp. App. 26-27 (insubordination); Supp. App. 42-43 (parking in staff parking lot); Supp. App. 45-47 (speeding ticket). Moreover, Young has not put forth evidence to show that she was subjected to more discipline than recruits who engaged in similar conduct, and thus did not show that the Department "treated more favorably similarly situated persons" who had not filed EEO complaints. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998).

Young presents only general allegations about two comparators who received less discipline for similar infractions: one recruit who received two demerits from the Corporal for insubordination, as opposed to the seven Young received, and a second recruit who used profanity and received no discipline from that Corporal, while Young

15

received two demerits.  Even assuming their conduct is comparable, Young provides no

evidence that either of these recruits had disciplinary records similar to hers, and thus she

did not demonstrate that these two other recruits are relevant comparators.  See Fuentes v.

Perskie, 32 F.3d 757, 765 (3d Cir. 1994).  Thus, the allegations regarding these two

comparators are insufficient to cast doubt on the Department's reason for Young's

termination and Young has therefore not shown that her termination was due to her EEO

complaint rather than her repeated violations of Department rules.

## III

For the foregoing reasons, we will affirm the order granting summary judgment.

Vanaskie, Dissenting

## I.

I respectfully dissent because I disagree with the Majority's conclusion that Young has not made the requisite showing to withstand summary judgment. Indeed, I find that the same evidence that the Majority finds sufficient to support a rational inference of causation on the plaintiff's prima facie case of retaliation is adequate to support an inference that unlawful retaliation was the but-for cause of the adverse employment actions taken against Young. Accordingly, I would reverse the order of the District Court and remand the case for trial.

## II.

The Majority properly concluded that Young proffered sufficient evidence to support a prima facie case of retaliation. First, she engaged in a protected activity by filing a complaint with the Department's EEO unit on April 18, 2010. See Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006). Second, the demerits Young received after making her complaint and her ultimate termination both qualify as materially adverse employment actions because they are the type of actions that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). Finally, there is a causal connection between Young's complaint and the adverse employment actions because the eight-day period between Young's EEO complaint and her receipt of seven demerits for insubordination is an "unusually suggestive" temporal proximity. See Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) ("Where

1

the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality and defeat summary judgment." (internal quotation marks omitted)); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (seven days held to be "unusually suggestive"); Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008) (four days); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (two days).

Moreover, drawing all inferences in Young's favor, Young presented evidence showing a pattern of antagonism after she filed her EEO complaint. See Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993) (causation can be established through a "pattern of antagonism" such as a "constant barrage of written and verbal warnings . . . and disciplinary action[s] . . . soon after plaintiff's initial complaints."). In the two months that Young worked at the Department prior to filing her EEO complaint, Young was disciplined only once for the minor infraction of not having her license at roll call. She received no demerits and only one duty day. In the two months following her EEO complaint, however, Young was disciplined at least ten times, receiving thirteen demerits and fourteen duty days. As the Majority points out, many of the incidents involved minor infractions, such as congregating in the hallway, wearing her tie too short, and carrying a gym bag that resembled a purse.[1] Although some of the incidents did not

---

[1] Notably, Young asserts that she had been carrying the same bag since she began working for the Department on February 22, 2010, yet was not reprimanded for using it until shortly after she filed her EEO complaint.

2

result in demerits or duty days, they do tend to show that Young was subjected to more intense scrutiny following her EEO complaint. And Young was pushed over the allowable limit for demerits as a direct result of having filed a complaint that resulted in an investigation. Accordingly, as the Majority concludes, the District Court erred in holding that Young had failed to produce evidence sufficient to support an inference of causation on the question of whether she could show a prima facie case of retaliation.

"If the employee establishes this *prima facie* case of retaliation, the familiar *McDonnell Douglas* approach applies in which 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct." Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500–01 (3d Cir. 1997)). Again, I agree with the Majority that the Department carried its burden by asserting that it issued Young demerits because of Young's repeated rule violations and ultimately dismissed her because she accrued more than fifteen demerits. The Department's proffer shifts the burden back to Young, who can now only prevail on her retaliation claim if she ultimately shows "by a preponderance of the evidence, that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" Marra v. Phila. Hous. Auth., 497 F.3d 186, 300–01 (quoting Moore, 461 F.3d at 342). In other words, Young must convince the factfinder that unlawful retaliation was the but-for cause of the adverse employment action. See Univ. of Tex. Sw. Med. Ctr. v. Nasar, 133 S. Ct. 2517, 2533 (2013).

At the summary judgment stage, however, a plaintiff's claim will survive so long as the plaintiff proffers some evidence, "direct or circumstantial, from which a factfinder

3

could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 198–99 (3d Cir. 2015) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)); see also Moore, 461 F.3d at 342; Krause, 126 F.3d at 501; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085–86 (3d Cir. 1996). If the plaintiff makes this showing, summary judgment is inappropriate because the plaintiff has raised "a factual issue regarding the employer's true motivation for discharge." Jalil, 873 F.2d at 707.

I believe that Young has made such a showing here. In addition to the "unusually suggestive" temporal proximity and pattern of antagonism discussed in the prima facie analysis,[2] Young also presented evidence that: (1) Captain William Maye "didn't understand" why Young received so many demerits for her first insubordination violation and that he had "never seen something like that before," Supp. App. 49; (2) Leon Telesford, a recruit who had not filed an EEO complaint, only received two demerits compared to Young's seven for engaging in similar insubordination; and (3) the Department's investigation revealed that multiple recruits admitted to making fun of Chamberlin and that Chamberlin admitted to using profanity in class, yet Young, the only recruit who filed an EEO complaint, was the sole individual who received any

---

[2] "As our cases have recognized, almost in passing, evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000).

4

discipline.[3] *See* Supp. App. 137–44 (summarizing interviews conducted during the Department's investigation). In my view, this evidence demonstrates the type of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that allow a factfinder to reasonably conclude that the Department's stated reasons for its adverse employment actions are "unworthy of credence, and hence infer that the employer did not act for [the asserted non-retaliatory] reasons."[4] Daniels, 776 F.3d at 199 (quoting Ross, 755 F.3d at 194 n.13).

In sum, Young has presented evidence from which a factfinder could reasonably conclude that retaliation for filing the EEO complaint was the but-for cause of the adverse employment actions taken against Young. Therefore, there is a material issue of fact as to the employer's "true motivation for discharge," a matter that is "within the sole province of the finder of fact and [cannot] be resolved on summary judgment." Jalil, 783 F.2d at 707, 709. Accordingly, I would reverse the order of the District Court and remand for further proceedings.

---

[3] In its response to interrogatories, the Department stated that "[u]pon information and belief, no one other than Plaintiff was disciplined or issued demerits as a result of the investigation into her complaints. Plaintiff was the only person whom the investigation revealed violated any policies or regulations." Supp. App. 298.

[4] The Majority disregards the evidence of comparators because they found that Young had not put forth evidence that the comparator recruits "engaged in similar conduct" or "had disciplinary records similar to [Young's.]" Majority Op. at 15–16. The Majority fails to explain, however, why similar disciplinary records are relevant when the Department's Rules and Regulations manual expressly identifies the offenses for which a recruit's prior disciplinary history should result in an increased penalty and the offenses that require only a warning for the first offense—none of which are implicated here. *See* Supp. App. 157, 168, 175. Moreover, the Department concedes in its brief that Telesford's insubordination was "similar to Ms. Young's." Appellee's Br. at 30.