# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 18-50144

———

United States Court of Appeals
Fifth Circuit

**FILED**
September 11, 2019

Lyle W. Cayce
Clerk

ESTEBAN GARCIA,

> Plaintiff – Appellant,

v.

PROFESSIONAL CONTRACT SERVICES, INCORPORATED,

> Defendant – Appellee.

————

Appeal from the United States District Court
for the Western District of Texas

————

Before ELROD, WILLETT, and DUNCAN, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Plaintiff Esteban Garcia sued his former employer, Professional Contract Services, Inc., for retaliation under the False Claims Act. The district court granted summary judgment to the employer on the basis that Garcia failed to establish a prima facie case and, in the alternative, that he had failed to establish pretext. We reverse.

I.

The Javits-Wagner-O'Day Act provides employment opportunities for people with disabilities by promoting their access to federal contracts. Defendant Professional Contract Services, Inc. (the company)—a nonprofit company—makes use of these opportunities, providing custodial and grounds

No. 18-50144

maintenance services on government-owned properties by employing individuals defined by the Javits-Wagner-O'Day Act as "severely disabled." The company hired plaintiff Esteban Garcia as an Operations Manager in September 2003. Garcia was later promoted to Senior Operations Manager, where one of his responsibilities was to ensure that the company was complying with its contracts with the government.

In April 2011, the company assigned Garcia to "Job 560," which called for custodial and ground services for sixteen separate U.S. Border Patrol locations in and around Laredo, Texas. The company says that it gave Garcia a copy of the federal contract for Job 560. But Garcia says that he received only certain portions of the contract. He says he never received the contract's statement of work, a critical component of the contract outlining the locations to be serviced, the building plans, what needed to be done at each location, and the frequency with which each location was required to be serviced. Garcia says that he asked multiple people, including the company's contracting specialist and Erick Rodas, the supervisor for Job 560 prior to Garcia, for a copy of the full contract, but never received it. Instead, Garcia says he had the company's project manager show him around some of the locations and tell him what needed to be done.

In November 2012, Garcia received an Employee Performance Review from his supervisor, Keith Walker. Garcia received a score of "Needs Improvement," the second lowest score possible, in the metric of "Accountability." Elaborating, Walker explained in the comments section of the review that Garcia's "preparedness for corporate information [was] typically substandard" and that Garcia was often unprepared for P&L meetings and proposal reviews. Garcia claims that this was based on a misunderstanding. Garcia says that Walker thought Garcia was not preparing until right before these meetings. Garcia says that, in reality, he was simply

organizing his comments, which he had already prepared, right before the meetings. Garcia says that he discussed this misunderstanding with Walker around the time of the review.

Other than this one negative review, Garcia's evaluations were consistently positive. From his hiring until the end of 2012, Garcia received annual raises and the maximum possible bonuses, and he even received a raise and a bonus in 2013, following the November 2012 review. Until the November 2012 review, Garcia consistently received scores of "Very Good" to "Excellent," and never anything worse than "Satisfactory."

In March 2013, the company discovered that one of the sixteen locations of Job 560—"Location 6," to be precise—had not been serviced in about two years, even though the company had been billing the government for that work. The company investigated and concluded that Garcia had not properly managed the location, so on April 9, 2013, the company issued a Disciplinary Action Report ("the Report") to Garcia. The Report required Garcia to review "every requirement, at every location, of every contract" assigned to him. The Report, which was styled as a "Final Written Warning," also warned Garcia that "insufficient improvement or misconduct may result in [f]urther disciplinary action up to and including termination." Shortly thereafter, in April 2013, the company explained to the government that there was a discrepancy between the services performed and the work billed, and the company credited the government for the work that could not be confirmed.

Garcia says that Location 6 was neglected for a different reason. He says that in 2003, Rodas told the contract manager not to clean the facility any longer. When Garcia asked Rodas about this, Rodas told him that the border patrol agents told him not to clean that location anymore. Garcia says that the agents had taken back the key to Location 6 so that the company could not

No. 18-50144

access that location—even if Garcia had been given the statement of work and knew what services needed to be performed at that location.

Two months later, in June 2013, the company concluded that Garcia had failed to properly service another job: Job 660, which consisted of cleaning two locations in El Paso, Texas. The company then terminated Garcia's employment, citing his oversight on Jobs 560 and 660. Garcia, however, says that the company had known about his shortcomings at Job 660 for years.

Garcia says he was fired for a different reason: his whistleblowing activity. Garcia says that beginning in 2011, Garcia reported to the company and to his supervisor that the company was billing the government for cleaning the parking lots on Job 560 when that work was not actually being performed. According to Garcia, the company ignored these reports and continued to bill the government. As a result, Garcia says he decided to report this information to the government. On April 24, 2013, Garcia e-mailed this information to the Chief Financial Officer at SourceAmerica, a nonprofit agency that helps the government administer contracts under the Javits-Wagner-O'Day Act. Garcia forwarded the e-mail to the company's General Counsel, and to SourceAmerica's General Counsel. Garcia later met in person with Robinson and had a number of telephone calls and e-mail exchanges with her.

In these interactions, Garcia made several allegations: (1) Garcia was concerned that Walker, his supervisor, would not report the issue with Location 6 of Job 560 to the proper people at the company or to the government; (2) the company was using contract managers to strip and wax the floors on certain projects in violation of certain Javits-Wagner-O'Day Act requirements; (3) landscapers on other projects worked overtime, but the company paid them as subcontractors instead of employees in order to avoid paying extra for the overtime work; (4) the company was certifying employees as disabled based on doctors' notes in Spanish when those employees were not disabled; and (5) the

No. 18-50144

company was sending its employees to specific doctors in Mexico in order to manipulate the company's disability numbers to get to the 75 percent disability threshold required by the Javits-Wagner-O'Day Act.

The company notes that these reports to people outside of the company took place entirely after the company had already raised the failure to service Job 560 with the government and agreed to reimburse the government for the services paid for but not delivered. The company notes that, by his own admission, this was the first time Garcia ever externally reported any issue regarding the company's billing of the federal government.

Garcia sued the company for wrongful retaliation and termination in violation of the False Claims Act. 31 U.S.C. § 3730(h). On March 1, 2017, the company filed a motion for summary judgment. On December 28, 2017, the district court held oral arguments. On January 18, 2018, the district court granted the company's motion for summary judgment. Garcia timely appealed.

II.

This court reviews a grant of summary judgment de novo. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 227 (5th Cir. 2009). Summary judgment is appropriate if "the record, taken as a whole, 'show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 740 (5th Cir. 2009) (alterations in original) (quoting Fed. R. Civ. P. 56(c)). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A disputed fact is material if it has the potential to 'affect the outcome of the suit under the governing law.'" *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 323 (5th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the

No. 18-50144

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Kevin M. Ehringer Enters. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citation omitted).

We "apply the *McDonnell Douglas* framework to the False Claims Act's anti-retaliation provision." *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 175 n.3 (5th Cir. 2016). Under this framework, the employee must first establish a prima facie case of retaliation by showing: (1) that he engaged in protected activity; (2) that the employer knew about the protected activity; and (3) retaliation because of the protected activity. *Solvay Pharms.*, 871 F.3d at 332; *see also United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016). Once an employee establishes a prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Solvay Pharms.*, 871 F.3d at 332 (citation omitted). After the employee provides that benign reason, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* (citation omitted).

Appellant argues that the district court: (1) applied the wrong causation standard when evaluating whether he made a prima facie case of retaliation; and (2) failed to consider the totality of the evidence offered by Appellant as proof of pretext. We address each issue in turn.

## III.

Garcia argues that his prima facie case requires only that he demonstrate a "causal connection" between his protected activity and his firing, even if he must ultimately demonstrate but-for causation at the pretext stage of the *McDonnell Douglas* framework. The company maintains that Garcia must overcome that heightened, but-for causation standard both at the

initial prima facie stage and again at the third and final pretext stage. We agree with Garcia, and we hold that Garcia meets that standard here.

## A.

In *University of Texas Southwestern Medical Center v. Nassar,* the Supreme Court made clear that Title VII retaliation claims must be proven according to traditional principles of but-for causation. 133 S. Ct. 2517, 2533 (2013). What the Court left unclear is whether this but-for causation requirement applies solely at *McDonnell Douglas*'s final pretext stage or whether it also applies at the initial prima facie stage.

The circuits are split on this issue, and the company argues the point as if our court has not yet picked a side of that circuit split. But we already have. Before *Nassar*, there was no question that a prima facie case in this court required only a "causal connection" between a protected activity and an adverse employment action, which could be established simply by showing close enough timing between the two events. *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Almost three months after the Supreme Court decided *Nassar*, we articulated the same standard. In *Feist v. Louisiana, Department of Justice, Office of the Attorney General*, we explained that the prima facie case's causation requirement could be satisfied by showing "close timing between an employee's protected activity and an adverse action against him."[1]   730 F.3d 450, 454 (5th Cir. 2013). The *Feist* opinion cites *Nassar*'s but-for-causation requirement only when describing the third, pretext step of *McDonnell Douglas*. *Id.* at 454 (("*After* the employer states its [nonretaliatory] reason, the burden shifts back to the employee to demonstrate

---

[1] This is, of course, not the only way to establish the causal connection. If a plaintiff cannot show close enough timing, he can make up for it by providing additional evidence. *See Feist*, 730 F.3d at 454 ("a five month lapse is not close enough *without other evidence of retaliation*") (emphasis added).

the employer's reason is actually a pretext for retaliation,' . . . which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive.") (emphasis added) (citing *Nassar*, 133 S. Ct. at 2533)); *see also Hague v. University of Texas Health Science Center at San Antonio*, 560 F. App'x 328, 336 (5th Cir. 2014) (citing *Nassar* for the pretext causation standard and never for the prima facie causation standard).

Numerous cases since *Feist* have applied this same close-timing-is-enough standard to the prima facie case. In *Heggemeier v. Caldwell County, Texas*, we considered whether the plaintiff had a claim under the Age Discrimination in Employment Act, which implements the same burden-shifting framework as the False Claims Act. 826 F.3d 861, 869 (5th Cir. 2016). We held that the plaintiff failed to meet the causal-connection requirement because "the period of twenty-one months between [the plaintiff's] complaint and his termination is simply too substantial a gap to support an inference of causation." *Id.* at 870. Similarly, in *Vargas v. McHugh*, the court held that the causal-connection requirement was not met because fifteen months was too long. 630 F. App'x 213, 217 (5th Cir. 2015). And in our unpublished decision in *Paul v. Elayn Hunt Correctional Center*, though the court confusingly said that "but-for causation" was required for the prima facie case, the court still decided the issue by considering whether the plaintiff had shown sufficiently close timing. 666 F. App'x 342, 348 (5th Cir. 2016). The court cited *Heggemeier* for the rule that "close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Id.* (alteration in original) (quoting *Heggemeier*, 826 F.3d at 870). The court then held that the thirty months was too long, and the plaintiff did not have enough other evidence. *Id.* All these cases hold that a plaintiff, even post-*Nassar*, can show the prima facie case's

required "causal connection" by pointing to close enough timing between the protected activity and the adverse action.  Though none of the plaintiffs in these cases had close enough timing to succeed, this was the standard by which their prima facie cases were evaluated.

Indeed, some of the other courts in the circuit split cited us as they made their decisions on this issue.  The Third Circuit, for example, listed *Feist* as one of the cases explaining that *Nassar* did "not alter the causation prong of the prima facie stage of retaliation analysis." *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 96–97 (3d Cir. 2016) (citing *Feist*, 730 F.3d at 454).  Likewise, the Fourth Circuit cited both *Feist* and our decision in *Hague* as examples of courts holding "that *Nassar* did not alter the elements of a prima facie case." *Foster v. Univ. of Md.—E. Shore*, 787 F.3d 243, 251 n.10 (4th Cir. 2015) (citing *Feist*, 730 F.3d at 454, and *Hague*, 560 F. App'x at 336).

This approach is not only binding circuit law, but it also makes good sense.  As the Third and Fourth Circuits have explained, applying the "but-for" standard at the prima facie step "would effectively eliminate the need to use the *McDonnell Douglas* burden shifting framework" at all.  *Young*, 651 F. App'x at 97 (citing *Foster*, 787 F.3d at 251).  Plaintiffs who could prove but-for causation at the prima facie stage would essentially "be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis." *Id.* (citing *Foster*, 787 F.3d at 251).  If the Supreme Court had intended to abandon the use of burden shifting in retaliation claims, "it would have spoken plainly and clearly to that effect." *Foster*, 787 F.3d at 251 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).

So, why does the company argue as if the issue is unsettled in our court?  Whence does this confusion arise?  The company points to a couple of unpublished decisions of our court that have flagged the circuit split over this issue.  *See Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 33 n.4 (5th

No. 18-50144

Cir. 2016); *see also Hernandez v. Metro Transit Auth. of Harris Cty.*, 673 F. App'x 414, 419 n.6 (5th Cir. 2016). These decisions do not reference the binding Fifth Circuit precedent on this point because they did not need to: both decisions resolved the cases before them on other grounds. *Smith*, 656 F. App'x at 33 n.4; *Hernandez*, 673 F. App'x at 419 n.6.

To the extent some unpublished cases have introduced murkiness into the case law in this area, that confusion should be resolved by applying our binding precedent. *Nassar*'s heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework. At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.

## B.

Under this standard, Garcia easily establishes his prima facie case. Before changing its position on appeal, the company conceded in the district court that the timing between Garcia's protected activity and termination was close enough to create a "causal connection." Counsel for the company said, "the only thing that [Garcia] has to show a casual connection is proximity and time. The Fifth Circuit says that up to four months could cause there to be an inference of proximity of causation from proximity in time. Here, we're dealing with about 76 days. I think that the proximity point gets them through the prima facie case."

This concession was correct. This court has previously held that a period of two months is close enough to show a causal connection. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994–95 (5th Cir. 2005). We have even suggested that four months is close enough. *Evans v. Cty. Of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). The Supreme Court has since approvingly cited a case that held three months was insufficient to show causation. *See Clark Cty. Sch. Dist.*

10

*v. Breeden*, 532 U.S. 268, 273–74 (2001).  But Garcia's two-and-one-half-month period still fits comfortably within the time periods of both our case law and *Breeden* to establish causation.  Accordingly, the district court erred in holding that Garcia failed to establish his prima facie case.

## IV.

The more difficult part of this case is the pretext analysis.  The company's stated explanation for Garcia's termination was his "repeated failures to manage the contracts assigned to him within the contractual requirements, first on Job 560 and then again later on Job 660."  Garcia does not dispute that this is a legitimate, nondiscriminatory reason for the discharge.  But Garcia does argue that this explanation is a pretext.  We hold that there is a genuine issue of material fact on this point.

Temporal proximity gets Garcia through his prima facie case but does not, on its own, establish that the company's stated explanation for Garcia's firing was mere pretext.  *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  At the pretext stage, the Supreme Court's decision in *Nassar* requires a showing of but-for causation, which requires more than mere temporal proximity.  *See id.*; *see also Feist*, 730 F.3d at 454 ("After the employer states its [legitimate] reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive" (internal citation and quotation marks omitted) (citing *Nassar*, 133 S. Ct. at 2533)).  "The combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).

In *Strong*, we upheld the district court's grant of summary judgment because the plaintiff's only evidence of pretext was temporal proximity.

*Strong*, 482 F.3d at 808.     In *United States ex rel King v. Solvay Pharmaceuticals, Inc.*, we held that evidence of temporal proximity combined with positive performance reviews was not enough to create an issue of fact regarding pretext.  871 F.3d 318, 334 (5th Cir. 2017).  In *Shackelford*, however, the plaintiff pointed to enough evidence beyond temporal proximity to create a genuine issue of material fact about pretext.  190 F.3d at 409.  The plaintiff's entire evidence in that case consisted of: (1) temporal proximity; (2) the plaintiff's dispute of events leading up to her termination; (3) other employees who directly warned the plaintiff not to engage in the protected conduct; and (4) employees who did not receive negative reviews even though they had the same problems that the plaintiff received poor reviews for.  *Id.*

Garcia's evidence is much more analogous to *Shackelford* than it is to *Strong* or *Solvay Pharmaceuticals*.  As evidence of pretext, Garcia points to: (1) temporal proximity between his protected activity and his firing; (2) his dispute of the facts leading up to his termination; (3) a similarly situated employee who was not terminated for similar conduct; (4) harassment from his supervisor after the company knew of his protected whistleblowing conduct; (5) the ultimate stated reason for the company's termination of Garcia had been known to the company for years; and (6) the company stood to lose millions of dollars if its conduct was discovered.  Taking this evidence in its totality and in the light most favorable to Garcia, as we must, Garcia has presented evidence that is just as strong—if not stronger—than the body of evidence in *Shackelford*, and that evidence thus creates a genuine issue of material fact.

The company argues against this conclusion by trying to knock out several of the evidentiary legs on which Garcia's pretext argument stands.  The company argues first that Erick Rodas, the employee whom Garcia points to as similarly situated, actually was not so similarly situated at all.  The district court agreed and rejected Garcia's pretext argument on this basis.

No. 18-50144

A plaintiff who proffers the treatment of a fellow employee must show that the plaintiff's termination was taken "under nearly identical circumstances" as those faced by the comparator. *Lee v. Ks. City So. Rwy. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009). Employees are similarly situated when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260. Critically, however, the conduct the employer points to as the reason for the firing must have been "nearly identical" to "that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.*

The district court held that Rodas was not a proper comparator by relying solely on dicta from *Lee* for the proposition that employees who work for different divisions of a company can never be similarly situated. *See Lee*, 274 F.3d at 259. But our case law has never imposed this requirement. *Lee* states in dicta that "employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Id.* *Lee* holds, however, that two employees were similarly situated because they "held identical positions," "compiled a similar number of . . . violations over a similar period of time"— including, critically, "an identical infraction for which [the plaintiff] was fired and [the comparator] was granted leniency"—and "their ultimate employment status rested with the same person." *Id.* at 262. *Lee* does not hold that a difference in work divisions—on its own—singlehandedly renders two employees as dissimilarly situated.[2]

---

[2] Nor does the case that Lee cites for the general proposition establish such an automatic, make-or-break rule about working in different divisions. *Id.* at 259 n.17 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). That case held that

No. 18-50144

The instant case is analogous to *Lee*. The undisputed facts are that Garcia and Rodas were both hired as operations managers, and they both had the same duties in overseeing contracts. They even managed the same project: Garcia took over Job 560 after Rodas. They also both reported to the same people, and they had similar histories of work violations. Critically, moreover, Rodas engaged in conduct similar to the conduct for which Garcia was terminated. In fact, it was under Rodas's management that the company stopped cleaning Location 6 of Job 560.

Just as in *Lee*, then, Rodas and Garcia had identical jobs, reported to the same people, had a similar history of infractions,[3] and both made mistakes overseeing Job 560. *Lee*, 574 F.3d at 262. While Garcia was fired for his mistakes on Job 560, the company gave Rodas multiple opportunities to improve his performance without terminating him. A reasonable jury, therefore, could conclude that the disparate treatment of Rodas and Garcia—in combination with the other evidence—supported an inference of pretext.

The company also claims that Garcia cannot rely on the fact that he disputed the facts leading up to his termination because he "admits that he committed errors on Job 660 and termination was appropriate." But the company points to nowhere in the record showing Garcia admitting that *he*

---

two employees were not similarly situated because, in addition to having "different job[s]," there were a number of other differences: the two employees had different employment problems, reported to different people, and the plaintiff was arguably treated better than the purported comparator in many respects. *See Wyvill*, 212 F.3d at 304–05. It was this entire set of "circumstances surrounding the disciplining of" the two employees that rendered them dissimilar—not the mere fact that they held different jobs or were in different divisions. *Id.* at 305.

[3] The company argues that Rodas is different because he was never assigned to work on Job 660, and therefore made no mistakes on Job 660 like Garcia did. But Garcia has evidence showing that the company knew about Garcia's mistakes on Job 660 for years before he was fired. He thus has evidence showing that his Job 660 mistakes were simply part of a work-violation history that was comparable to Rodas's and that it was his protected activity that explains the difference in treatment between these two employees.

14

No. 18-50144

*was fired* because of his mistakes on Job 660. To the contrary, Garcia presents significant evidence showing that the company knew about his Job 660 mistakes years before he engaged in protected activity, thus undermining the company's claim that he was fired for this conduct and not because of his protected activity.

\* \* \*

Garcia legitimately relies on Rodas as a comparator and on his dispute of the facts leading up to his termination. This, along with his other evidence, puts his case on all fours with *Shackelford*. The district court therefore erred in granting summary judgment. Of course, this holding does not mean that Garcia will prevail at trial or that Garcia's mistakes on Jobs 560 and 660 were not the real reasons for the company's decision to terminate Garcia's employment. It means only that Garcia produced enough evidence to survive summary judgment.

V.

We therefore REVERSE the district court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.

15