# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20312
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 19, 2019

Lyle W. Cayce
Clerk

JESSIE MOORE,

      Plaintiff - Appellant

v.

MEGAN J. BRENNAN, Postmaster General of the United States,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:17-CV-85

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

      Jessie Moore, a United States Postal Service (USPS) employee, appeals from the district court's summary-judgment dismissal of his Title VII retaliation claims. Because Moore has failed to meet his burden to show pretext, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20312

I.

In 2011, Moore began work as a maintenance mechanic, level 7, at the USPS's General Post Office in downtown Houston.  Around March 2015, the General Post Office was sold, and USPS began to reassign the employees who worked at that facility to other positions.  Because Moore is a veteran, he was not required to move to a lower level position.  USPS did, however, request that Moore volunteer for a lower level position and sign a letter waiving his right to contest the lower level assignment.  Moore refused to sign the letter and told other employees that they did not have to sign the waiver letter. Although Moore bid for a position at his same pay level, he did not receive the job.  USPS then attempted to reassign Moore to a mail carrier position.

Moore complained to Kenneth Spence, one of the USPS officials responsible for the reassignment process, that the mail carrier position was too physically demanding for him.  After Moore provided Spence with medical forms from his doctor, Spence agreed that Moore could not physically work as a mail carrier.  In April 2015, based on this medical documentation, USPS asked Moore to go back to the doctor to ensure that he was fit to continue to work as a maintenance mechanic.  Moore's supervisor instructed Moore to remain home until USPS could confirm that Moore could continue his job as a maintenance mechanic.  Ultimately, USPS allowed Moore to return to work as a maintenance mechanic.  Even so, on April 29, 2015, Moore filed an informal EEO complaint alleging discrimination based on race, religion, and age.

Once Moore returned to work, USPS required him and other employees to help move postal equipment and furniture out of the General Post Office. According to Moore, only those employees who refused to sign the waiver letter had to do this heavy lifting.  He contends that USPS sent its other employees to work at its North Houston facility.  Moore complains that, during this time period, the air conditioner at the General Post Office was turned off, and that

2

No. 19-20312

USPS exposed him to extreme heat and hazardous materials. Moore also complains that, although a manager stated that all employees who helped USPS move out of the General Post Office would receive a week of out-of-schedule pay, he never received his promised $500.

In July 2015, USPS moved Moore from the General Post Office to the Field Maintenance Office. Around two months later, Moore made a successful bid for a maintenance mechanic, level 7 position at USPS's North Houston Office. Despite being notified that he would start in this position on October 31, 2015, Moore contends that he remained at the Field Maintenance Office until May 2016. According to Moore, he was the only employee with a maintenance mechanic, level 7 position required to stay at the Field Maintenance Office and move heavy equipment. Moore then filed another EEO complaint related to the assignment of these tasks, alleging discrimination and retaliation.

In May 2016, USPS assigned Moore to work in automation at the North Houston Office. Although this job required Moore to work on USPS's delivery bar code sorter machines, USPS did not give Moore the proper tools to work on these machines until approximately one month after he started the assignment.

Moore sued, alleging that USPS had engaged in numerous acts of retaliation in violation of Title VII. The complaint also included references to potential breach of contract and age discrimination claims, but Moore later consented to dismissal of those claims, leaving only his retaliation claims. Moore also acknowledged that his allegations of retaliation related only to incidents occurring after May 1, 2015. Thus, the district court granted Brennan's motion to dismiss Moore's allegations of retaliation regarding incidents prior to May 1, 2015. On March 19, 2019, the district court granted

No. 19-20312

Brennan summary judgment on Moore's Title VII retaliation claims, and dismissed the suit. Moore timely appealed.[1]

## II.

We review the district court's grant of summary judgment de novo, viewing all the facts and evidence in the light most favorable to the non-movant. *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

We apply the *McDonnell Douglas* burden-shifting framework to Title VII retaliation claims based on circumstantial evidence. *See Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under this framework, the aggrieved employee creates a presumption of unlawful retaliation by first establishing a prima facie case of retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory

---

[1] Moore makes no argument that the district court erred in dismissing his age discrimination and breach of contract claims. Although Moore discusses, at length, USPS's proposal to transfer Moore to a mail carrier position and requirement that Moore obtain medical documentation, he does not challenge the district court's order dismissing his allegations of retaliation regarding incidents prior to May 1, 2015. Thus, we deem those claims to have been waived. *See* Fed. R. App. P. 28(a)(8) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and the parts of the record on which the appellant relies."). Because Moore's briefing addresses only his Title VII retaliation claims, he has also abandoned any claim that USPS discriminated against him in violation of Title VII. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

reason" for its actions. *Id.* If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is pretext for unlawful retaliation. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005).

To prevail in a Title VII retaliation case, a plaintiff must ultimately prove that but for his employer's desire to retaliate he would not have suffered an adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). A plaintiff successfully establishes a prima facie case of retaliation if he demonstrates that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). At the prima facie stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). But on its own, close temporal proximity between protected activity and an adverse employment action is insufficient to establish pretext. *Id.* However, "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 393, 409 (5th Cir. 1999).

Here, the district court granted Brennan summary judgment because it found that Moore's sole evidence of causation was the temporal proximity between his protected activity and various allegedly adverse employment actions. This holding implicates the pretext stage of the *McDonnell Douglas* burden-shifting framework. Focusing on that stage of the burden-shifting framework, we address each adverse employment action in turn.

No. 19-20312

A.

The first allegedly adverse employment action that occurred after May 1, 2015 was the requirement that Moore help move furniture and other equipment out of the General Post Office. According to Moore, USPS required only the employees who did not sign the waiver letter to do this work, and these employees were exposed to extreme heat during this time period. Brennan has proffered a legitimate, nondiscriminatory reason for requiring Moore to complete these tasks—it was part of a restructuring effort by the USPS in Houston. Specifically, Brennan has presented evidence that because there was no more maintenance work for Moore to perform at the General Post Office and Moore was unable to transfer to a carrier position, USPS had to assign him the work that was available, which happened to be assisting with moving equipment out of the General Post Office. Accordingly, Moore must show that this reason is pretext for unlawful retaliation.

As evidence of retaliation, Moore points to the temporal proximity between this event and his filing of the EEO complaints. Moore also points out that prior to his reassignment he did not have previous complaints of poor performance. This fact, however, is irrelevant to the pretext inquiry because Brennan has not suggested that USPS reassigned Moore due to poor performance. In his affidavit, Moore also states that his managers "constantly harassed me and pressured me to sign the waiver letter." But Moore provides no evidence to back up this conclusory assertion. Instead, he merely speculates that management attempted to reassign him to other positions and required him to complete certain tasks in an attempt to harass him for refusing to sign the waiver letter. Accordingly, Moore's only evidence of retaliation is the temporal proximity between his reassignment and protected activity. As we have noted, on its own, close temporal proximity is insufficient to establish

pretext. *See Garcia*, 938 F.3d at 243. Thus, Moore's retaliation claims with respect to the work USPS required him to do at the General Post Office fails.

B.

Moore next alleges that USPS retaliated against him by denying him $500 in out-of-schedule pay. According to Moore, USPS promised all workers who helped move equipment out of the General Post Office that they would receive a week of out-of-schedule pay in the amount of $500. In his affidavit, Moore states that "[t]he employees who did sign the waiver letter, did receive the pay." Brennan disputes that USPS offered its employees the $500 in out-of-schedule pay and provides evidence that even if the offer had been made, it was not connected to Moore's protected activities. For example, in his deposition, Moore stated that he was uncertain as to whether the failure to receive the promised pay was related to his EEO complaints or refusal to sign the waiver letter. Moreover, although other employees stated that they recalled being promised the $500 pay, these employees did not state that they knew of anyone who received the out-of-schedule pay.

Moore has failed to show that USPS withheld the $500 due to his EEO complaints or refusal to sign the waiver letter. Moore has pointed to no evidence that Paul Wheeler, the manager who allegedly made the comment about the payment, knew that Moore had engaged in protected activity. Additionally, Moore's statement that other employees received the promised pay because they signed the waiver letter is purely speculative. Besides Moore's statement, there is no record evidence of any USPS employee having received this payment, much less evidence that employees received the payment because they agreed to volunteer for lower level assignments. Thus, Moore has failed to show that USPS refused to pay him the $500 in out-of-schedule pay in retaliation for engaging in protected activities.

No. 19-20312

C.

Moore next asserts that USPS retaliated against him by not allowing him to move to the North Houston facility until May 2016, even though he received notification that he would be moved to the North Houston facility in October 2015. Specifically, Moore complains that from September 2015 through May 2016 USPS forced him to perform tasks that were not within a maintenance mechanic's job description, caused him to miss out on overtime opportunities, and required him to work in locations other than the North Houston facility.

Brennan has offered evidence that, even prior to the General Post Office shutting down, Moore had been expected to perform a variety of tasks that were not explicitly enumerated in his job description. Brennan has also presented evidence that, even though USPS informed Moore that he would be based at North Houston, operational needs dictated that he work on assignments outside that facility. Finally, Brennan has presented evidence that, during this time period, overtime desired lists were made available to Moore and that he in fact signed up for one such list in early 2016. These explanations satisfy Brennan's burden to present legitimate, non-retaliatory reasons for these allegedly adverse employment actions.

Thus, Moore must demonstrate pretext. Once again, Moore almost exclusively relies on the temporal proximity between these allegedly adverse employment actions and his protected activity to support his claims of retaliation. Moore's evidence that (1) his bid notification stated that he would start work at North Houston in October 2015, (2) after October 2015, witnesses, who knew Moore had engaged in protected activity, observed him working outside the North Houston facility on tasks not enumerated in his job description, and (3) he did not receive overtime during this time period goes towards only whether Moore suffered an adverse employment action and does

No. 19-20312

not rebut Brennan's explanations for why USPS required Moore to work outside the North Houston facility.

Further, Moore has failed to show that the real reason USPS required him to work outside the North Houston facility was that he had previously engaged in protected activity. Although Moore speculates that his managers, Kevin Sheriff and Scott Hilton, may have possessed retaliatory animus, his only evidence of this is that they knew of his EEO claims. Moore also alludes to the fact that USPS treated him differently from other maintenance mechanics, stating that he was the only maintenance mechanic, level 7 required to work at the Field Management Office and that USPS placed all other maintenance mechanics from the General Post Office in positions elsewhere. Evidence of disparate treatment between employees may be relevant to the pretext inquiry, but a plaintiff who proffers the treatment of fellow employees as evidence of pretext must show that those employees were similarly situated to the plaintiff. *See Garcia*, 938 F.3d at 244. Here, Moore has provided no evidence regarding his fellow employees except that they held his same job title and were placed in positions outside the Field Management Office. He does not explain who decided to transfer these individuals or what positions they were able to obtain. Thus, the evidence provided by Moore is insufficient to create a question of fact on the issue of pretext.

D.

Moore finally argues that USPS retaliated against him when it required him to work on delivery bar code sorter machines but did not provide him with a toolbox, lockout/tagout, or personal protective equipment. Brennan asserts that the delay in receiving the necessary equipment was not because of Moore's protected activity but was due to Moore's equipment being placed in storage after the General Post Office closed. Brennan has additionally presented evidence that USPS management worked to request new equipment for Moore.

9

No. 19-20312

Moore has failed to rebut this explanation for the delay in receiving his equipment. In his deposition, Moore stated that he was "not certain" why USPS delayed providing him with his equipment but that he thought "it had something to do with what [he] was doing with these EEOs." This falls short of demonstrating but-for causation. Indeed, the only evidence of retaliation with respect to this delay is the temporal proximity between the delay in receiving equipment and the filing of Moore's EEO complaints. As stated, a plaintiff must show more to survive summary judgment in a Title VII retaliation case. *Cf. Shackelford*, 190 F.3d at 409. Thus, Moore's claim that USPS's delay in providing him with equipment was due to retaliation for filing his EEO complaints fails.

Because Moore has failed to demonstrate that any of his employer's explanations for the allegedly adverse employment actions that he claims to have suffered were pretextual, his Title VII retaliation claims fail as a matter of law. Thus, the district court did not err when it granted Brennan summary judgment on these claims.

## IV.

In sum, Moore has not provided sufficient evidence of pretext to survive summary judgment on his Title VII retaliation claims. Accordingly, the judgment of the district court is

AFFIRMED.

10