# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2020

Lyle W. Cayce
Clerk

No. 20-30243
Summary Calendar

Golden K. Berry,

*Plaintiff—Appellant*,

*versus*

Sheriff's Office Ouachita Parish; Sheriff Jay Russell;
Chief Deputy Marc Mashaw; Colonel James Purvis;
Scott Smith,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
No. 3:18-CV-1397

Before King, Smith, and Wilson, *Circuit Judges*.

Per Curiam:*

Golden Berry sued the Ouachita Parish Sheriff's Office ("OPSO")
and several individual officers, alleging racial discrimination and retaliation
for filing a complaint with the U.S. Equal Employment Opportunity Com-

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30243

mission ("EEOC"). Berry moved for summary judgment on his retaliation claim; the defendants moved for summary judgment denying both of Berry's claims. The district court denied Berry's motion and granted the defendants'. We affirm the denial of Berry's motion for summary judgment on his retaliation claim. We affirm the summary judgment regarding Berry's racial discrimination claim. Finally, we reverse the summary judgment in favor of defendants on Berry's retaliation claim.

I.

OPSO hired Berry, who is black, as a correctional officer in 2000. He attained the rank of Corporal in 2003 and maintained his position for thirteen years. His job required that he alternate between working day and night shifts. Seeking to work consistent day shifts, Berry approached Deputy Scott Smith about the possibility of transferring to a role in the Transitional Work Release Center. Berry successfully applied for a deputy role at the center—a demotion from his position as Corporal. He alleges that Smith assured him that, despite taking a reduced rank, he would retain his current level of pay. Smith denies making any such representation.

After transferring, Berry saw his pay decrease. He contends that OPSO allowed white employees to transfer while maintaining both their rank and their pay.

In November 2017, Berry filed a charge of racial discrimination with the EEOC. He also filed a corrections statement in March 2018. Leaders within OPSO learned of Berry's EEOC complaint in late January or early February 2018, at which point Captain Bryan Boney, who had replaced Smith as director of the Transitional Work Release Program, reached out to Berry and asked why he had filed a complaint.

In January or February 2018, Berry also qualified to run for city council. He won his election in March 2018 and was scheduled to be sworn in as

a councilman on June 29. Boney saw the election results on television and notified Colonel James Purvis, who had the authority to fire Berry. Four days later, Boney and Purvis summoned Berry and terminated his employment on the basis that he could not hold office while working as a deputy sheriff. OPSO did not offer Berry the opportunity to work until he was sworn in to office, nor did OPSO give Berry the option to decline his elected position and retain his employment at the Center.

Berry filed a charge of retaliation with the EEOC in May 2018 and supplemental charges of retaliation and wrongful termination with the EEOC in August 2018. In July 2018, the EEOC provided Berry with a right-to-sue letter for his racial discrimination charge, and in September 2018 Berry received a right-to-sue letter for his retaliation charge. Berry sued for discrimination based on race and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Berry moved for summary judgment on his retaliation claim, and the defendants moved for summary judgment on both of Berry's claims. The district court denied Berry's motion and granted the defendants' motion, dismissing Berry's claims with prejudice. Berry appeals.

## II.

We review a summary judgment *de novo* and apply the same legal standards as did the district court. *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 576 (5th Cir. 2020). Per Federal Rule of Civil Procedure 56(a), summary judgment is proper where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We view all evidence in the light most favorable to Berry, the non-moving party. *Id.*

## A.

We first review the summary judgment on Berry's racial discrimin-

ation claim. To analyze whether a plaintiff has established a *prima facie* case of racial discrimination under Title VII based on circumstantial evidence, we apply the *McDonnell Douglas* framework.[1] Under that framework, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was . . . treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556.

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the action. *Id.* at 557. If the employer does so, the burden shifts back to the plaintiff, who then must establish either that the employer's reason was pretext for discrimination or that the plaintiff's protected status was a motivating factor for the action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

Berry bases his racial discrimination claim on circumstantial evidence. Applying the *McDonnell Douglas* framework, the district court found that he failed to satisfy the fourth prong, explaining that he did not show that he was treated less favorably than similarly situated employees outside his protected class. The court stated, however, that even if Berry had established a *prima facie* case, his claim would still fail because he had not shown that OPSO's given reason for his termination was pretext.[2]

In providing a nondiscriminatory reason for reducing Berry's pay, OPSO contends that it did so because he voluntarily transferred into a posi-

---

[1] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[2] Because the district court was correct in its pretext analysis regarding Berry's racial discrimination claim, we need not assess whether it properly found that Berry had failed to establish a *prima facie* case of racial discrimination.

tion with a lower rank in order to maintain a daytime work schedule. Because defendants provided a nondiscriminatory reason for the adverse action, the burden shifted back to Berry to show that the reason was pretextual or that his protected status was a motivating factor in his pay decrease. *See Alvarado*, 492 F.3d at 611.

Berry failed to make such a showing. The defendants presented evidence that the other transferees applied to open positions with ranks that permitted them to maintain their pay. It is undisputed that Berry knowingly and voluntarily transferred to a position with a lower rank. Although there is a dispute of fact about whether he was promised that his pay would remain the same despite his reduced rank, Berry did not show that other transferees were permitted to take a position with a lower rank while maintaining their pay. He failed, therefore, to provide evidence of disparate treatment, because the employees whose transfers he pointed to as evidence of such treatment were not similarly situated. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Indeed, a plaintiff's subjective belief that he was the victim of racial discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004). The district court properly granted summary judgment on the racial discrimination claim.

### B.

Berry contends that the district court erred in denying his motion for summary judgment. He also asserts that the district court erred in granting OPSO's motion for summary judgment on his retaliation claim.

Berry maintains that OPSO terminated him because he filed a racial discrimination complaint with the EEOC. Under Title VII, employers may not retaliate against an employee because the employee opposed a practice made unlawful by Title VII, registered a complaint under Title VII, or parti-

cipated in an investigation under the law. *Brown*, 969 F.3d at 576–77. Where a retaliation case is based on circumstantial evidence, we apply *McDonnell Douglas*. *Id.* at 577. That framework requires the plaintiff to establish a *prima facie* case of retaliation by demonstrating "(1) that he engaged in activity protected by Title VII; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

As the district court correctly found, Berry established a *prima facie* case of retaliation. Lodging his complaint with the EEOC was a protected activity. OPSO terminated Berry from his job, and "termination is a classic example of adverse employment action under our caselaw." *Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 358 (5th Cir. 2019). Finally, by, *inter alia*, producing evidence that OPSO had knowledge of his EEOC complaint before his termination, Berry met the "causal connection" element. Thus, he satisfied the elements of a *prima facie* case of retaliation.

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for taking the adverse action. *Brown*, 969 F.3d at 577. If the employer satisfies that burden, then the burden returns to the plaintiff to show that the employer's stated reason is pretextual. *Id.* OPSO offered a nondiscriminatory reason for firing Berry: because he violated the OPSO Manual of Rules by running for office without notifying his superiors.

Because OPSO proffered a nondiscriminatory explanation, the burden shifts to Berry to show that that reason was pretext for retaliation. *Id.* To prevail in a claim that the employer's reason was pretextual, a plaintiff must establish "that the adverse action would not have occurred but for the employer's retaliatory motive . . . ." *Feist v. La., Dep't of Justice, Office of the*

*Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks omitted).   Furthermore, to survive a motion for summary judgment, a plaintiff "must show that there is a 'conflict in substantial evidence' on this ultimate issue." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)).   "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Hernandez*, 670 F.3d at 658 (cleaned up).

In support of his contention that OPSO's proffered reason for his termination was pretextual, Berry points to (1) the temporal proximity between his supervisors' learning of his EEOC complaint and his termination, (2) OPSO's shifting explanations for his termination, and (3) the inconsistent application of OPSO policies against him compared to similarly situated white employees.

Berry notes that OPSO learned of his complaint in late January or early February 2018.  He further points out that he was fired less than two months later, within days of OPSO's learning of his running for office.  A two-month gap between a protected activity and an adverse action is close enough to serve as evidence of pretext—indeed, "'a time lapse of up to four months' may be sufficiently close" to provide such evidence. *Feist*, 730 F.3d at 454 (quoting *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001)).  Temporal proximity "is relevant to, but not alone sufficient to demonstrate, pretext," so we proceed to examine Berry's additional evidence. *Brown*, 969 F.3d at 579.

Berry alleges that OPSO provided shifting explanations for his termination and that that inconsistency is evidence of pretext.  "[A]n employer's inconsistent explanations for its employment decisions at different times permits [*sic*] a jury to infer that the employer's proffered reasons are pre-

7

textual." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., L.P.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) (cleaned up).

OPSO provided shifting rationales for Berry's termination. As the district court noted, Colonel Purvis, Chief Mashaw, and Captain Boney initially testified that OPSO terminated Berry because he allegedly violated the Louisiana law against dual officeholding. Similarly, Berry's separation notice states that his reason for termination was "Violation of Louisiana Law." Berry, however, cited caselaw to show that his employment with OPSO after his election but months before assuming office did not violate Louisiana law. Moreover, he established that at least one white employee worked for OPSO between his election to office and his swearing-in. In response, OPSO offered a different explanation for Berry's termination, stating that he was fired for violating policies in the OPSO manual. OPSO's shifting reasons provide some evidence of pretext.

Relatedly, Berry asserts that OPSO inconsistently applied its policies, enforcing rules against him that it did not enforce against similarly situated white employees. The "inconsistent treatment of [a plaintiff] raises disputed issues of material fact as to whether[] but for exercising her rights she would have been discharged." *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 711 (5th Cir. 2016). Moreover, a "plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

OPSO contends that Berry violated the manual (1) by running for office and, thereby, engaging in political activity and (2) by failing to request permission from his supervisor before attaining outside employment. Berry, however, points out that multiple OPSO employees have run for elected

office.  Indeed, one of them wore his OPSO uniform in a political advertisement, contravening the manual's ban on campaigning in uniform.

OPSO asserts that Berry is not similarly situated to the other employees who ran for office because they informed their supervisors that they were running for office and took leaves of absence during their campaigns.  Berry, however, casts doubt on whether the other employees actually made formal requests or took leaves of absence.  Indeed, he points out that Sheriff Jay Russell testified that the policy requires employees to submit a letter before running for office.  During discovery, Berry requested any documentation pertaining to four other employees' requests for leaves of absence.  OPSO answered that there were no responsive documents because leave was verbally given.  The absence of such documentation shows that, at the very least, OPSO was not adhering to its own purported policy of requiring "a written summary of proposed duties" before entering outside employment.

Moreover, Berry notes that his discovery requests included inquiries for additional documentation of the other employees' alleged leaves of absence, such as payroll sheets.  OPSO provided no such documents to show that the alleged leaves of absence even occurred.  The district court took OPSO at its word that other employees had informed OPSO of their campaigns and had taken leaves of absence when running for office; thus, the district court concluded that OPSO's reasons for terminating Berry were not pretextual.

Berry, however, requested evidence that the other employees actually requested and took leaves of absence, and OPSO did not provide any supporting documentation.  The absence of such evidence—which should be readily available—raises an issue of material fact on the basis of which a reasonable jury could find that OPSO's purported reasons for terminating Berry were pretextual.  *See, e.g.*, *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236,

245 (5th Cir. 2019).

Considering the timing of his firing, OPSO's shifting explanations for his termination, and the possibility that OPSO applied its policy against Berry but not against other employees who ran for office, we conclude that "taking [the] evidence in its totality and in the light most favorable" to Berry "creates a genuine issue of material fact." *Id.* at 244. This does not mean that Berry will necessarily prevail at trial or that his termination was definitively retaliatory. *See id.* at 246. But he has produced enough evidence to survive summary judgment on his retaliation claim.

We therefore AFFIRM the summary judgment dismissing Berry's racial discrimination claim. We AFFIRM the denial of Berry's motion for summary judgment on his retaliation claim. We REVERSE the summary judgment for defendants on the retaliation claim and REMAND for further proceedings as appropriate.