# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 7, 2020

Lyle W. Cayce
Clerk

No. 20-30253
Summary Calendar

CRYSTAL A. ANDERSON,

*Plaintiff—Appellant*,

*versus*

LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1597

Before JOLLY, ELROD, and GRAVES, *Circuit Judges*.

PER CURIAM:*

Crystal Anderson was fired after she complained of her supervisor's alleged racist and sexist behavior to his superior at the Louisiana Department of Transportation and Development. The district court granted the

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-30253

Department's motion for summary judgment because Anderson failed to point to a material fact supporting her allegation that she engaged in a protected activity under Title VII of the Civil Rights Act. We REVERSE and REMAND to the district court.

I.

We set forth the facts as alleged by the plaintiff. Anderson worked for the Louisiana Department of Transportation and Development from 2012–2016. She was the only female on her crew, and one of only two African-American individuals. As part of a bridge crew, Anderson worked four days a week for ten hours per day. Bridge workers would have Fridays off, unless they wanted to work overtime for extra money. Anderson tended to use her Fridays for doctor's visits.

On Friday, March 18, 2016, Anderson had a doctor's appointment scheduled. Her supervisor, Dennis Rushing, told her she would need to come in to work overtime. Anderson informed Rushing of her appointment, and Rushing told her she need not come in. Later that night, however, Rushing called Anderson and informed her that she would have to provide a doctor's note when she returned on Monday.

Anderson asked another co-worker who was also taking that Friday off whether he had been told to bring in such a note. The co-worker, who was a white male, said he had not been required to provide any documentation. Anderson asked Rushing about the disparity but did not receive a satisfactory response. She called Rushing's supervisor, Joshua Bedgood, to ask why she, an African-American, was required to provide a doctor's note when her white, male co-worker was not. Bedgood said he would get back to her. On Monday, Bedgood told Anderson that the difference was that Anderson had actually seen a doctor, whereas her co-worker was merely taking his girlfriend in for her appointment.

No. 20-30253

After that, Anderson claims that it became apparent that Rushing wanted her dismissed from the Department. She alleges that Rushing told a co-worker that he wanted Anderson "out of here," that he refused to work an extra shift if Anderson and the other African-American employee would be the only others on the shift, and that he indicated on another occasion that he hoped to be able to fire her. Anderson alleges that Rushing always assigned her to drive the only vehicle without working air conditioning and assigned her to drive with James Bison, who was not permitted to drive.

In May of 2016, Anderson claims that Rushing instructed her and Bison to work on a project a short way away from the main project her crew was working on. When they had finished, Rushing allegedly instructed them to ride around and wait for him to call them back to the main project. When Anderson and Bison finished their project, they went to Lake Ivan to eat lunch. After arriving, Rushing called to ask where they were and berated them for taking so long to return. He told them that they would be written up, but he never formally did so.

A few days later, Anderson and Bison were called into the office to meet with Rushing, Bedgood, and another supervisor, John Rawling. Rawling accused Anderson and Bison of stealing time from the State by riding around and not working. Anderson objected that she was only obeying Rushing's instructions, but she was told that her excuses were insufficient. She could either resign on her own or face termination and potential criminal charges. She chose to resign.

After receiving a right-to-sue letter from the EEOC, Anderson brought the present suit alleging that the Department violated Title VII of the Civil Rights Act by creating a hostile work environment and by firing her for reporting Rushing's discrimination to Bedgood. She argues that the reason the Department gave for her termination was pretextual. According

to her, Rushing discriminated against her because she is African-American and female, and she was fired for reporting his discrimination to Bedgood. She seeks back pay, front pay, punitive damages, and other litigation expenses.

The Department moved for summary judgment in this case, arguing that Anderson had failed to provide evidence of a Title VII violation. The district court granted the motion, determining that (1) Anderson had not demonstrated that she had experienced harassment based on race or sex and (2) Anderson had not pointed to any evidence suggesting that she engaged in a protected activity under Title VII.

## II.

We review a district court's grant of summary judgment de novo. *Petro Harvester Operating Co., LLC v. Keith*, 954 F.3d 686, 691 (5th Cir. 2020). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting *United States v. Nature's Way Marine, LLC*, 904 F.3d 416, 419 (5th Cir. 2018)). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

Although Anderson initially brought both a hostile-work-environment claim and a retaliation claim in the district court, her brief before this court focuses solely on her retaliation claim. Her hostile-work-environment claim is therefore forfeited. *See United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2018). We consider only Anderson's retaliation claim in this appeal.

The question is whether Anderson has shown that there exists a genuine dispute of a material fact regarding her retaliation claim. To succeed

on a Title VII retaliation claim, the plaintiff must first establish that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse employment action. *Harville v. City of Houston*, 945 F.3d 870, 879 (5th Cir. 2017). Once a prima facie case has been made out, the burden shifts to the defendant to provide a legitimate reason for its actions. *See id.* at 874–75. If such a reason is provided, then the plaintiff bears the final burden of establishing that the defendant's reason was pretextual. *See id.*

The district court concluded that Anderson had failed to establish a prima facie case of retaliation because she had not shown that she engaged in an activity protected by Title VII. We disagree.

An employee engages in a protected activity under Title VII when she has "(1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e–3(a)).

Anderson argues that she did oppose an unlawful practice when she called Bedgood about Rushing's requirement that she, but not her white, male co-worker, provide a doctor's note for her Friday absence. The Department contends that this was nothing more than a call to clarify the Department's policy regarding leave time. The contents of that discussion are material to Anderson's claim. If Anderson did complain to Bedgood in that phone call, then that would qualify as opposition to Rushing's unlawful discriminatory practices. *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 626 (5th Cir. 2008).

Although the Department argues otherwise, the record before the district court establishes that the contents of that call are disputed. Anderson's complaint, which is certified and therefore qualifies as competent summary judgment evidence, contains her testimony that she called to inquire why she was being treated differently than her white, male co-worker. *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). This directly contradicts what the Department's proffered evidence suggests. Because this fact was in dispute, summary judgment on this point was inappropriate.

The Department contends further that Anderson presented no evidence that she had suffered an adverse employment action because she resigned of her own volition. Anderson contradicts this, however, with her own affidavit that she was forced to resign at the meeting where she was disciplined for "riding the roads" when her supervisor allegedly instructed her to do just that. If the facts alleged there are true, Anderson's forced resignation could amount to a constructive discharge. *See Pa. State Police v. Suders*, 542 U.S. 129, 142–43 (2004). She has therefore presented evidence giving rise to a genuine dispute of material fact.

Anderson has also presented evidence that, if believed by a jury, could establish the necessary "causal connection" through the proximity in time of her complaint to Bedgood and her allegedly forced resignation. We have previously held that a "two-and-one-half month period" was sufficient to establish causation, and Anderson's allegation of a less-than-two-month period "fits comfortably within" that boundary. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Thus, a dispute of material facts exists regarding this third element of Anderson's prima facie case.

Finally, Anderson has presented evidence that a factual dispute exists regarding the validity of the reason the Department provided for her

termination.    After a plaintiff has made out her prima facie case, the defendant must provide a legitimate reason for their actions.  If it does so, the burden falls on the plaintiff to provide evidence that the reason was really a pretext for retaliation. *Id.* at 241.  At the pretext stage, the plaintiff must show "but-for causation, which requires more than mere temporal proximity." *Id.* at 244.  It requires the plaintiff to show that "the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Feist v. La. Dep't of J.*, 730 F.3d 450, 454 (5th Cir. 2013).

Although the Department provides a legitimate, non-discriminatory reason for pressuring Anderson into resigning, Anderson argues that the reason is pretextual.  There is a real dispute of material fact on this point. Although the temporal proximity would be insufficient to withstand summary judgment on the pretext analysis, Anderson points to "evidence beyond temporal proximity to create a genuine issue of material fact about pretext." *Garcia*, 938 F.3d at 244.  Anderson presents evidence suggesting that she would not have been forced to resign had she not reported Rushing's behavior to Bedgood because: (1) there was temporal proximity between her report to Bedgood and her resignation; (2) other employees engaged in similar behavior without reprimand; (3) the Department failed to follow its own disciplinary protocol in reprimanding her; and (4) Rushing harassed Anderson after she reported his behavior to Bedgood.  This evidence gives rise to a dispute of material fact.  The Department was not entitled to summary judgment in this case.

## III.

We therefore REVERSE the district court's grant of summary judgment and REMAND for further proceedings consistent with this opinion.